705 So.2d 172 (1997)
In re Judge Thomas P. QUIRK.
No. 97-O-1143.
Supreme Court of Louisiana.
December 12, 1997.
*174 Steven R. Scheckman, Katherine M. Mattes, Nancy E. Rix, Hugh M. Collins, Ph. D., New Orleans, for Applicant.
John M. Veron, Lake Charles, for Respondent.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
KIMBALL, Justice.[*]

ISSUE
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that Respondent, Judge Thomas P. Quirk, of the Lake Charles City Court, State of Louisiana, be, inter alia, suspended without pay for a period of one year and ordered to reimburse to the Judiciary Commission the costs incurred in the investigation and prosecution of this case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and law, and determined that Respondent violated Canons 2 A, 2 B, 3 A(1) and 3 A(4) of the Code of Judicial Conduct and engaged in willful misconduct relating to his official duty and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La. Const.Art. V, 25(C). After reviewing the record before us, however, we conclude the Commission's recommendation of discipline should be rejected.

PROCEDURAL HISTORY
On December 12, 1995, the Judiciary Commission filed Formal Charges consisting of four separate charges against Judge Thomas P. Quirk. Charge I alleged that Judge Quirk had sentenced and ordered in excess of 1,200 defendants to attend church once a week for one year. Charge II alleged Judge Quirk had ordered family members of defendants appearing before him to attend church. The conduct underlying these charges was alleged to be in violation of the Establishment Clause of the First Amendment to the United States Constitution [1] and Canons 2 A [2], 3 A(1) [3] and *175 3 A(4)[4] of the Code of Judicial Conduct. Charge III generally alleged, inter alia, that Judge Quirk directed his personal attorney, who was representing him before the Judiciary Commission and in federal district court on matters pertaining to the church sentencing, to file responsive pleadings on behalf of the City of Lake Charles in the matter City of Lake Charles v. Thompson, No. 94-1451, in which the defendant was challenging the constitutionality of Judge Quirk's sentence of church attendance, without disclosing the simultaneous representation to the court of appeal or to Thompson's attorney, in violation of Canons 1[5], 2 A, 3 A(1) and 3 A(4) of the Code of Judicial Conduct. Charge IV alleged Judge Quirk on August 29, 1994 and again on September 21, 1994 had written letters in his official capacity on his official court stationery to a judge in Tennessee seeking mercy on behalf of his brother-in-law.[6]
A hearing was held on September 27 and 28, 1996, and on April 30, 1997, the Commission issued its "Findings of Fact and Conclusions of Law" indicating its belief that Charges I, III and IV had been proven by clear and convincing evidence and constituted a violation of Canons 2 A, 2 B, 3 A(1) and 3 A(4) of the Code of Judicial Conduct.[7] The Commission recommended a suspension without salary for six months for Charge I and a suspension without salary for six months for Charge III.[8] The Commission additionally recommended that the suspensions run consecutively, that Judge Quirk be ordered to pay the costs of the investigation and prosecution of the case in the amount of $6,835.70, that he be ordered by this court to refrain from sentencing any defendant who comes before his court to attend church or to attend any program that includes religious precepts, and that he be ordered to tape record all his court proceedings and retain them for inspection by this court and the Commission.

DISCUSSION

A. JURISDICTION, STANDARD OF REVIEW, AND BURDEN OF PROOF
This court has original jurisdiction in judicial disciplinary proceedings. La. Const. *176 Art. V, Sec. 25(C). Therefore, this court has the power to make original determinations of fact based upon the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. The grounds for disciplinary action against a judge are set forth in La. Const. Art. V, Sec. 25(C) which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss or salary, during the pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
Under its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976. This Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as the basis for the disciplinary action provided for by La. Const. Art. V, Sec. 25(C). In re Marullo, 96-2222 p. 3 (La.4/8/97), 692 So.2d 1019, 1021; In re Decuir, 95-0056 p. 7 (La.5/22/95), 654 So.2d 687, 692. On the other hand, however, it is not necessary that there be a violation of a Canon of the Code of Judicial Conduct for there to be constitutional misconduct under Article V, Section 25(C). "If there is misconduct as defined in the Constitution, it is irrelevant that no ... ethical canon has specifically been violated." In re Lemoine, 96-2116 p. 2 (La.4/4/97)(on rehearing), 692 So.2d 358, 359.
The standard of proof in judicial discipline cases is the clear and convincing standard. In re Johnson, 96-1866 p. 7 (La.11/25/96), 683 So.2d 1196, 1199; In re Huckaby, 95-0041 p. 6 (La.5/22/95), 656 So.2d 292, 296. This standard requires that the level of proof supporting the Commissions' factual findings must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt. Id.
For purposes of clarity, we will discuss the charges individually.

B. CHARGE I:
From some time in 1993 until November of 1994, Judge Quirk sentenced 540 defendants, who appeared in his court for various traffic offenses and misdemeanors, to attend a church of their choosing once a week as a condition of probation. Not one of these defendants objected at the time of sentencing.[9] After a complaint challenging this practice was filed against Judge Quirk with the Judiciary Commission in November of 1994, Judge Quirk began offering church attendance, as a condition of probation, only to those who specifically requested it. Approximately 969 defendants were sentenced in this fashion. After the complaint was filed in November of 1994, Judge Quirk sent a letter dated December 5, 1994 to the 540 defendants previously sentenced to attend church advising them that if they objected to the sentence of church attendance, he would provide to them the opportunity to be re-sentenced. Ten defendants elected to be resentenced. Judge Quirk testified he employed church attendance as a condition of probation only in cases where he perceived the defendants to be unable to afford a fine or court costs, and, the church sentence was given in lieu of jail time, a fine, court costs or some other typical condition of probation. Judge Quirk also testified the total number of people given church attendance as a condition of probation constituted about 3% of his docket.
The defendants sentenced to attend church were required to pay a $25.00 administrative fee to the Safety Council of Southwest Louisiana which monitors attendance on behalf of the court of defendants at various programs *177 which are made conditions of probation such as defensive driving classes, alcoholics studies classes, and the community service program. With respect to the church attendance monitoring program, the defendant is given a card to be returned to the Safety Council which must be signed by a "church official" verifying the defendant has attended church for that week.
There is no evidence to dispute Judge Quirk's testimony that the defendants could attend a church or religious institution of their choosing, they could attend any church function, such as a "men's meeting," and not just religious services, and they were not required to profess any belief in any religion. During the hearing before the Judiciary Commission, Judge Quirk explained he adopted this sentencing practice because the normal sentence for certain offenders of jail and/or payment of fines and court costs was not an option because he had been informed there was no room in the jail for these types of offenders and because some offenders could not afford the fines or court costs. He preferred attendance at church as a condition of probation because it was a free service, it was usually "open" and "readily available," even during travel out of town, and because the Safety Council monitoring fee was only $25.00 as compared to the $75.00 fee required for participation in the Community Service program.
The Judiciary Commission, after a hearing, issued Findings of Fact and Conclusions of Law in which it found that Judge Quirk's "church sentences" are "clearly" unconstitutional under the First Amendment of the United States Constitution[10] and Article I, Sec. 8 of the Louisiana Constitution of 1974[11], and that Judge Quirk's imposition of these illegal sentences violates Canons 2 A, 3 A(1) and 3 A(4) of the Code of Judicial Conduct because it constituted a pattern of committing egregious legal error in violation of defendants' constitutional rights made in bad faith in order to further a bias toward religion.
This case squarely presents an issue of first impression in Louisiana, and that is under what circumstances may legal error by a judge constitute grounds for a finding of judicial misconduct. It is with great care that we address this issue, for subjecting a judge to discipline because of an erroneous legal ruling has the potential to trammel the exercise of judicial discretion and stifle the independence of the judiciary. Judicial independence is a cornerstone of our legal system as is recognized in Canon 1 of the Code of Judicial Conduct, which states that "[a]n independent and honorable judiciary is indispensable to justice in our society."[12] Furthermore, the provisions of the Code are to be construed and applied to further the objective of "independence of the judiciary", and, as "a necessary corollary, the judge must be protected in the exercise of judicial independence." Code of Judicial Conduct, Canon 1 (1996). See also Ben F. Overton, Grounds for Judicial Discipline in the Context of Judicial Disciplinary Commissions, 54 Chi. Kent L.Rev. 59, 66 (1977)("To allow disciplinary proceedings to evaluate judicial decisions could force judges to walk an illdefined and standardless line between propriety and impropriety. Clearly, such a sword over a judge's head would have a tendency to chill his independence."); Shaman, J. Judicial Conduct and Ethics, § 2.02 p. 32 (2nd Ed.1995)("Imposing discipline upon a judge for an incorrect legal ruling is an extremely sensitive issue because of the potential impact on judicial independence. The preservation of an independent judiciary requires that judges not be exposed to personal discipline on the basis of case outcomes or particular rulings, other than in extreme or compelling circumstances."); and Chandler v. Judicial Council, 398 U.S. 74, 84, 90 S.Ct. 1648, 1653, 26 L.Ed.2d 100 (1970)("There can, of course, be no disagreement among us as to the imperative need for total and absolute independence of judges in *178 deciding cases or in any phase of the decisional function.").
Our three-tiered system of judicial review necessarily exists, in part, to reverse legal errors made below. In this manner, the vast majority of legal errors are more properly addressed on appeal and do not amount to judicial misconduct. Where mere legal error is involved, "the disciplinary process should not be used as a substitute for appeal." Jeffrey M. Shaman, Judicial Ethics, 2 Geo. J. Legal Ethics 1, 8 (1988); Judicial Conduct and Ethics, supra, § 2.02 p. 32 ("[T]he usual safeguard against error or overreaching lies in the adversary system and appellate review."). In order to maintain an independent judiciary, mere errors of law or simple abuses of judicial discretion should not amount to judicial misconduct. Harrod v. Illinois Courts Commission, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53, 65 (1977).
However, while judicial independence allows innovative judges the freedom to develop new methods to be used in the administration of justice, it was not intended to shield from discipline those judges whose disregard for the law in their legal rulings detrimentally affects the public's regard of the judiciary.[13] Consequently, there are circumstances under which legal error may constitute grounds for a finding of judicial misconduct. A survey of scholarly writing and jurisprudence on this topic reveals there are three situations involving legal error which may be found violative of one or several of the Canons. These are egregious legal error, legal error motivated by bad faith, and a continuing pattern of legal error. Judicial Ethics, supra, 2 Geo. J. Legal Ethics at 8-9; Judicial Conduct and Ethics, supra, § 2.02 at p. 32.
A single instance of serious, egregious legal error, particularly one involving the denial to individuals of their basic or fundamental rights, may amount to judicial misconduct. Judicial Ethics, supra, 2 Geo. J. Legal Ethics at 9; Gerald Stern, Is Judicial Discipline in New York State a Threat to Judicial Independence?, 7 Pace L.Rev. 291, 303 (1987). An example of this is where a judge told the jurors sitting on a criminal case to "go in that room and find the defendant guilty," thereby depriving the defendant of his fundamental right to be tried by a jury. McCullough v. Commission on Judicial Performance, 49 Cal.3d 186, 260 Cal.Rptr. 557, 776 P.2d 259 (1989). Intentionally refusing to follow the law constitutes a legal error made in bad faith and may also be grounds for a finding of judicial misconduct. Judicial Ethics, supra, 2 Geo. J. Legal Ethics at 9. Finally, a pattern of repeated legal error (although not necessarily the same error) over a period of time can constitute judicial misconduct, regardless of whether the errors were made in bad faith or were egregious in nature. Id.
Although several state supreme courts have imposed discipline for legal errors made by judges which were egregious, made in bad faith, and/or were part of a pattern and practice of legal error, there was no dispute in those cases the legal rulings made by those judges were clearly error under statutes or jurisprudence. For example, it has been held to be not only judicial error but also judicial misconduct when judges have consistently failed to advise defendants of their constitutional right to counsel, denied defendants a full and fair hearing, coerced guilty pleas, directed the jury to find a defendant guilty, failed to order recognizance or bail in nonfelony cases, or sentenced defendants to jail when only a fine is provided for by law.[14]
*179 Whether a legal decision made where the law thereunder is arguably unclear or ambiguous can subject a judge to a finding of misconduct was discussed in the following two cases. In Harrod v. Illinois Courts Commission, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53 (1977), the Illinois Courts Commission found that a trial judge who had required some probationers to get haircuts and others to turn in their drivers' licenses had committed a "gross abuse of judicial power" and ordered the judge suspended for thirty days without pay. At the time, the statute dealing with permissible conditions of probation said the conditions "shall be" that the defendant not violate any criminal statute and make a report to a person or agency as directed by the court, plus, "in addition to other conditions," the judge may require the person to do any of ten permissible conditions enumerated therein. The judge argued that he interpreted the statute to allow him to impose conditions other than those specifically enumerated. The Commission disagreed with this interpretation, instead concluding the phrase "in addition to other conditions" included only those additional enumerated conditions which were directed toward rehabilitation, reasonably related to the offense for which the probation was being imposed, and which were not unduly restrictive on personal liberty. At the time of the judge's actions, no court had interpreted this statute. The Commission, however, felt the judge's actions were without the authority of law and therefore constituted judicial misconduct. The Supreme Court of Illinois strongly disagreed with the Commission and issued a writ of mandamus directing the Commission to expunge the suspension order from its records. The court acknowledged that "where the law is clear on its face, a judge who repeatedly imposes punishment not provided for by law is subject to discipline." 14 Ill.Dec. at 260, 372 N.E.2d at 65. However, the court found that where the law was not "clear on its face," the Commission "possesse[d] no power to interpret statutory ambiguities or to compel judges to conform their conduct to any such interpretation ... To grant the Commission *180 such authority would interfere with an independent judicial system and would place trial judges in an untenable position." Harrod, 14 Ill.Dec. at 261, 372 N.E.2d at 66. The court then stated:
The function of the Commission is one of fact finding. Its function in this case was to apply the facts to the determined law, not to determine, construe, or interpret what the law should be. We find that the Commission exceeded its constitutional authority when, in determining whether petitioner's orders were without authority of law, it applied its own independent interpretation and construction of section 5-6-3(b) to the petitioner's conduct.
One legal commentator echoes the approach taken by the Illinois Supreme Court in Harrodthat only decisions made contrary to law which is "clear on its face" and "determined" may lead to a finding of judicial misconduct. "Close questions of law are not the proper subject of disciplinary proceedings. Nor is it the function of a disciplinary body to determine whether the judge misapplied the law." Stern, supra, 7 Pace L.Rev. at 303-4 n. 30.
The Maine Supreme Court has taken a slightly different approach to this issue. In Matter of Benoit, 487 A.2d 1158 (Maine 1985), the court found several legal errors made by a judge constituted judicial misconduct. The Maine court did not discuss whether the legal error must be egregious, made in bad faith, or part of a pattern and practice of errors. Nor did it discuss whether the error must have been made under law which is clear on its face or determined. Rather, it simply concluded that the test for misconduct applicable to a judge's rulings was "whether a reasonably prudent and competent judge, putting himself in the place of [the judge in question] would conclude that those actions were both obviously and seriously wrong." 487 A.2d at 1163. The action must be both obviously and seriously wrong because "[a] judge ought not be sanctioned... for an error of law that a reasonable judge would not have considered obviously wrong in the circumstances or for an error of law that is de minimis." Id. When applying the test to the facts, however, the Maine Supreme Court found misconduct in three cases where the judge had taken action which was clearly unauthorized and unconstitutional under the law while it found no misconduct in four cases where the actions the judge took were not clearly illegal at the time because of the existence of "tension," "confusion," and "some question" as to the state of the law, and because of the discretion afforded the trial court in certain, specific rulings. 487 A.2d at 1168 and 1170. Thus, although the Maine Supreme Court's test for judicial misconduct premised on legal error as written seems broad enough to include those judicial decisions made where a binding authority has not yet spoken to the issue but a "reasonable judge" might think the decision to be "obviously" and "seriously" wrong, the court's application of the test does not bear this interpretation out. Rather, Harrod and Benoit are consistent in their holdings that a legal decision made by a judge, although it may ultimately be reversed for legal or judicial error, may only constitute judicial misconduct where the law is clear on its face and determined and where there is no confusion, tension, or question about its interpretation.
In light of the above, we today announce the following standard to be applied by this court and by the Judiciary Commission in addressing whether a judge has committed legal error sufficient to the rise to the level of judicial misconduct.[15] We do so, ever mindful of the need to carefully balance the dual purposes of preservation of the independence of the judiciary and protection of the public from the abuse of judicial power. After all, the "primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline a judge." In re Marullo, 96-2222 p. 6 (La.4/8/97), 692 So.2d 1019, 1023. Consequently, a judge may be found *181 to have violated La. Const. Art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error.[16]
In the instant case, the Judiciary Commission alleges Judge Quirk's practice of giving "clearly unconstitutional" sentences triggers all of the aforementioned categories of disciplinable legal error because it constitutes a pattern of egregious legal error made in bad faith. In reaching the conclusion that the sentencing practice is "clearly unconstitutional", the Commission undertakes a survey of Establishment Clause jurisprudence and renders its opinion that the practice is unconstitutional. The Commission relies on (1) several Supreme Court and federal appellate court decision which address the Establishment Clause but have nothing to do with sentencing, (2) cases by federal appellate courts and other state courts which deal with sentencing to Alcoholics Anonymous or Narcotics Anonymous programs, (3) two supreme court decisions from other states which conclude a sentence of church attendance as a condition of probation violates the Establishment Clause under certain circumstances, and (4) a Louisiana First Circuit Court of Appeal case stating same, for its conclusion that Judge Quirk's sentencing practice is unconstitutional. Judge Quirk, in turn, relies on some of the same cases, as well as other cases from other jurisdictions, urges that recent Supreme Court decisions have abandoned the "outdated wall of separation" jurisprudence, argues all church sentences were voluntary and optional [in that defendant could have chosen to pay the fine and/or court costs] and refers us to a quotation from a 1995 Fifth Circuit Court of Appeals case ironically cited in the Judicial Commission's own brief to this court that "modern Establishment Clause jurisprudence is rife with confusion." There is not one case cited by the parties by the United States Supreme Court, by this court, or by the Louisiana Third Circuit Court of Appeal, the jurisdiction of which encompasses Judge Quirk's court, which even discusses the constitutionality of such a church sentencing practice. In other words, while there is a wealth of cases from other jurisdictions, some directly on point but most not, which lend support to both the Judge's and the Commission's interpretations of the Establishment Clause, there was no case by any court whose decisions would have been binding on Judge Quirk as a Lake Charles City Court judge which specifically addressed the issue of whether making church attendance a condition of probation violated the Establishment Clause of the First Amendment.[17] As *182 noted by the Fifth Circuit Court of Appeals in Doe v. Duncanville Independent School Dist., 70 F.3d 402, 405 (5th Cir.1995), and quoted earlier, "modern Establishment Clause jurisprudence is rife with confusion." See also The Supreme Court, 1994 Term, 109 Harv. L.Rev. 10, 170 (1995)("The jurisprudence of the Establishment Clause is currently in a state of flux.").
Under these circumstances, we can hardly conclude the jurisprudence on the issue of whether a judge may make, or offer as a voluntary alternative, church attendance a condition of probation is sufficiently clear, determined and without tension or confusion, to justify a finding of judicial misconduct. Although Judge Quirk's sentences may, or may not, ultimately be found unconstitutional, either in an appeal of one of his own sentences or in a case in a jurisdiction binding on Judge Quirk involving other parties, at the time the sentences were rendered, they were not clearly illegal under the law.[18] *183 That the Judiciary Commission and Judge Quirk have a difference of opinion as to how the existing Establishment Clause jurisprudence should be interpreted does not and should not constitute a finding of judicial misconduct by Judge Quirk. A finding of judicial misconduct on Charge I, where the law on the Establishment Clause is, in fact, not clear, is "rife with confusion" and is subject to varying interpretations, and where no court in a jurisdiction binding on Judge Quirk has spoken directly on this issue, would strike to the very heart of Canon 1 of the Code of Judicial Conduct which we are obligated to uphold which is that a judge "must be protected in the exercise of judicial independence." We therefore reject the Commission's conclusion that Judge Quirk's conduct under Charge I constitutes a violation of the Code of Judicial Conduct and Art. V, Sec. 25 of our constitution.

C. CHARGE II
See supra n. 7.

D. CHARGE III
The Formal Charges given Judge Quirk in this case by the Judiciary Commission constituted, by the document's own terms, notice that "a hearing is necessary to rule on the charges specified below that they may constitute cause for disciplinary action against you." Charge III stated in its entirety:
A. That a complaint dated October 25, 1994, was received by the Commission concerning the sentencing of Gregory Thompson, by you, JUDGE THOMAS P. Quirk, to attend church, as well as your church attendance sentencing practices generally. In response, a letter of inquiry, dated October 31, 1994 was sent by the Commission, to you, JUDGE THOMAS P. QUIRK, notifying you of the complaint and asking for response in order to assist the Commission in making a determination as to whether an investigation was warranted.
B. In the case of City of Lake Charles v. Thompson, No. C15835, before you, JUDGE THOMAS P. QUIRK, Mr. Thompson, on June 21, 1994, was sentenced to attend church once a week. On November 3, 1994, Mr. Thompson, through counsel, filed a Notice of Intent to Apply for Writs to the Third Circuit, Court of Appeal, concerning said sentence. On November 21, 1994, Mr. Thompson filed his writ application with the Third Circuit, Court of Appeal, in City of Lake Charles v. Thompson, No. 94-1451.
C. On November 21, 1994, Mr. Thompson also filed suit against you, JUDGE THOMAS P. QUIRK, and the Safety Council of Southwest Louisiana (the entity that in effect serves as the probation department for the Lake Charles City Court) in the United States District Court for the Western District of Louisiana concerning your sentencing practices. Thompson v. Quirk, et al. (USDC No. 94-2132). Said lawsuit was formally served upon you on November 30, 1994.
D. On or about November 28, 1994, you, JUDGE THOMAS P. QUIRK, retained J. Michael Veron to represent you before the Judiciary Commission and the United States District Court. On December 7, 1994, on your behalf, J. Michael Veron submitted a response to the Commission's letter of inquiry in this matter. On December 6, 1994, on your behalf, J. Michael Veron submitted a letter to Mr. Thompson's counsel requesting that the suit then pending against you before the United States District Court for the Western District of Louisiana be voluntarily dismissed.
E. On or about November 28, 1994, you, JUDGE THOMAS P. QUIRK, also retained J. Michael Veron for the additional purpose of preparing and filing responsive pleadings to the writ application in the matter of City of Lake Charles v. Thompson, No. 94-1451, on behalf of a party to the proceeding, the City of Lake Charles. On December 7, 1994 you, JUDGE THOMAS P. QUIRK, caused and directed your counsel, J. Michael Veron, without lawful authority, to appear as "Special Counsel" for the City of Lake Charles and to file a Motion to Dismiss, in the Thompson matter, then pending before your court and the Third Circuit.
1. That you, JUDGE THOMAS P. QUIRK, were advised previously, by a *184 representative of the City of Lake Charles, that it would neither pay for, nor provide, a defense for you in the proceedings concerning your sentencing practices.
2. That J. Michael Veron at no time was officially appointed "Special Counsel" by the proper appointing authority of the City of Lake Charles and you, JUDGE THOMAS P. QUIRK, were aware of this fact.
3. That J. Michael Veron billed you, JUDGE THOMAS P. QUIRK on or about January 31, 1995, in part, for legal services rendered on behalf of a party, the City of Lake Charles, in the Thompson matter then pending before your court and the Third Circuit.
4. Upon information and belief, you, JUDGE THOMAS P. QUIRK, paid J. Michael Veron's bill of January 31, 1995, including those fees for legal services rendered on behalf of the City of Lake Charles.
F. Neither you, JUDGE THOMAS P. QUIRK, nor J. Michael Veron on your behalf, notified the Third Circuit, or Mr. Thompson's counsel, of J. Michael Veron's apparent simultaneous representation of you, and a party to the Thompson matter, the City of Lake Charles. The simultaneous representation existed, in different forums, concerning the very same case, City of Lake Charles v. Thompson, and issues.
1. Moreover, neither you, JUDGE THOMAS P. QUIRK, nor J. Michael Veron, on your behalf, notified the Third Circuit or Mr. Thompson's counsel that you were ultimately responsible for the payment for Mr. Veron's legal services rendered on behalf of a party, the City of Lake Charles, in the Thompson matter then pending before your court and the Third Circuit.
G. By reason of the foregoing Sections A through F, you have:
(1) Violated Canons 1, 2A, 3A(1) and 3A(4) of the Code of Judicial Conduct, adopted by the Supreme Court of Louisiana, effective January 1, 1976; and
(2) Engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
The tenor of this charge is that Judge Quirk allegedly "retained" the attorney who was representing him in the federal lawsuit and judiciary complaint, both filed by Thompson, to appear in and file a motion to dismiss in the Thompson matter on behalf of the City of Lake Charles, that the hiring of Veron for this purpose was without lawful authority under Lake Charles city law, that the dual representation by Veron constituted unethical conduct, and that Judge Quirk and Veron failed to disclose the simultaneous representation to the court of appeal and Thompson's counsel.
Throughout the proceedings below, both before and after the Formal Charges were filed, and up until the Judiciary Commission issued its conclusions of law in its recommendation to this court, this charge was continually treated and referred to by Disciplinary Counsel, without any indication of an objection by the Judiciary Commission, as alleging a simultaneous representation by Veron of Judge Quirk and the City of Lake Charles which was directed by Judge Quirk, which should have been disclosed to the third circuit court of appeal and Thompson's counsel, and which was improper because Mr. Veron was allegedly acting as Judge Quirk's agent as an attorney for a party in a case in which Judge Quirk sat as judge. See, e.g., the Motion to Recuse Counsel for Judge Thomas P. Quirk, J. Michael Veron, R. 711-12; Memorandum in Opposition to Exceptions of Lack of Subject Matter Jurisdiction and No Cause of Action, R. 967-75; Memorandum in Support of Motion to Enforce or Reissue a Subpoena to J. Michael Veron Pursuant to LSA-C.E. Art. 508, R. 1001-1004; Special Counsel's Proposed Findings of Fact, Conclusions of Law and Recommendation for Discipline, R. 1629-1632, 1641-1643. In Disciplinary Counsel's opening statement to the Commission at the formal hearing, he described Charge III as involving "Mr. Veron's representation of Judge Quirk and the appearances by Mr. Veron in multiple capacities on behalf of Judge Quirk and the City of Lake *185 Charles," R. 156, and again as involving "Mr. Veron and his representation of the City of Lake Charles and Judge Quirk in a simultaneous fashion." R. 158.
After the formal hearing, where Judge Quirk was questioned about the circumstances relating to how and why Thompson's writ application filed with the third circuit court of appeal became moot and about the facts underlying his resentencing of another defendant, Thomas Kelly, the Commission issued its recommendation to this court which included findings of fact and conclusions of law. The Commission therein states:
The Commission need not and declines to address the portion of Charge III as to Mr. Veron's appointment as Special Counsel to the City of Lake Charles, the critical factor for analysis here being the judge's injection of his own counsel into the third party proceeding.
The Commission continued, in footnote 9:
Because Judge Quirk was not a party to the Third Circuit proceeding in Thompson, the Commission reaches no conclusion as his failure to inform that appellate court that Mr. Veron was the judge's private legal counsel.
Instead, the Commission concluded there was judicial misconduct as to the following (emphasis added):
Judge Quirk's actions with regard to Gregory Thompson and Thomas Kelly demonstrate a pattern of preventing the issue of the constitutionality of their church attendance sentences from undergoing appellate review. Such obstructionist behavior constitutes willful misconduct relating to Judge Quirk's official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute ... Such a pattern of preventing appellate review and disregarding legal authorities is demonstrated by our Findings of Fact....
. . . . .
The Commission cannot ignore from the judge's hearing testimony, from comments made by him from the bench (transcripts of which were entered into evidence), and from the more than 50+ letters of support entered into the record by Judge Quirk that the popularity of his sentencing church practices has, at least in part, further colored his judgment by preventing him from accepting guiding legal principles of constitutional law, and causing him to try to thwart testing of his rulings at the appellate level. Judge Quirk's protestations that he was not motivated by the popularity of his sentencing practices are not believable, considering the manner in which the judge has characterized the issue of popularity and further considering his boastfulness when this issue was addressed at the hearing.
Upon this conclusion, the Commission recommended a suspension without pay of six months.
In brief to this court, Judge Quirk argues the Commission's conclusions of law and recommendation of discipline with respect to Charge III improperly go beyond the scope of the Charge as originally written. Although not technically couched as such, Judge Quirk's argument raises an issue involving his constitutionally guaranteed procedural due process rights because he alleges he did not receive notice in the Formal Charge this behavior was the subject of an investigation, and therefore he did not have an opportunity to defend against, or even know he needed to defend, against such an allegation at the hearing.
The Rules of this court provide a judge is entitled to notice of the charges against him, frequently referred to as the "Formal Charges." After the preliminary investigation is completed, if the Commission decides a hearing should be instituted, it shall issue a written notice to the judge advising him of the "planned proceedings to inquire into the charges against him." Supreme Court Rule 23, Section 4(a). The notice "shall specify in ordinary and concise language the charges against the judge and the alleged facts upon which such charges are based." Section 4(b). A formal hearing will be held, at which a judge has the "right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel, and to examine and cross-examine *186 witnesses." Section 9(a)(emphasis added).
Judge Quirk's right to notice of the charges against him arises not only from this court's Rules but also from basic principles of constitutional law. Although the imposition of discipline on a judge for judicial misconduct under Art. V, Sec. 25 has as its primary purpose the protection of the public, In re Marullo, 96-2222 p. 6 (La.4/8/97), 692 So.2d 1019, 1023, it is nevertheless a punishment or penalty imposed on the judge. Accordingly, the judge is entitled to procedural due process which includes fair notice of the charge.[19] The charges against the respondent must be so specific as to fairly inform him of the misconduct of which he is accused. In re Haggerty, 257 La. 1, 241 So.2d 469, 475 (1970).
Although this court has not had occasion to explicitly address this issue in a judicial discipline case, we have discussed it in cases concerning lawyer misconduct. For example, in Louisiana State Bar Association v. McGovern, 481 So.2d 574 (La.1986), discipline was recommended to this court on several breaches of ethical conduct unrelated to the original charges. This court held that because McGovern was not given "fair notice" of the additional violations, "any deprivation of the attorney's right to continue practicing law on the uncharged violations would deny him due process of law." We additionally noted:
Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. Thus, he is accordingly entitled to procedural due process, which includes fair notice of the charge....
... McGovern had no notice that his acts or omissions in the uncharged violations would be considered disbarment offenses until after he had testified at length on all of the material facts pertaining to them and the commissioner had filed his findings based on that testimony. How the charges would have been met had they been originally included in those leveled against respondent by the bar association no one knows.
Likewise, in Louisiana State Bar Association v. Boddie, 534 So.2d 944 (La.1988), the attorney was formally charged only with conversion and failure to deliver client funds arising out of his handling of one account. This court noted that although respondent had committed other ethical violations with respect to this account [such as failing to place his client's funds in a client's trust account and failing to maintain records and render an appropriate accounting], because he was not given "fair notice" of these additional charges "in order to protect the respondent from an unconstitutional deprivation of due process, only the violations included in the charges of the bar association's petition will be considered." 534 So.2d at 946. See also Louisiana State Bar Association v. Keys, 567 So.2d 588 (La. 1990).
We note that other states also prohibit the discipline of a judge based on conduct not contained in the original formal charge. For example, in Cannon v. Commission on Judicial Qualifications, 14 Cal.3d 678, 122 Cal.Rptr. 778, 537 P.2d 898 (1975), the judge was charged with misconduct arising out of multiple instances of his changing counsel for defendants, without their consent, from the previously appointed Public Defenders' Office to private counsel. The Commission's conclusions of law found the above constituted misconduct and additionally found misconduct in the judge's "unwarranted interference in the operation of the Public Defenders' Office." 122 Cal.Rptr. at 790, 537 P.2d at 910. The Cannon court held that conclusion should be "stricken" as irrelevant since "no charge of such interference was contained in the formal notice", even though it was "perhaps factually supported." Id. See also In re Flanagan, 240 Conn. 157, 690 A.2d 865, 875-76 (1997)("A judge is only entitled to reasonable notice of the charges upon which he may be disciplined after the review council has determined *187 what those charges are. Discipline may not be imposed in the absence of a formal hearing preceded by reasonable notice of the charges."); and In re Deming, 108 Wash.2d 82, 736 P.2d 639, 650 (1987)(A judge is entitled to "notice of the charge and the nature and cause of the accusation in writing.").
Finally, in a case which arose in the context of an attorney disciplinary proceeding, but which is otherwise very similar in application, the United States Supreme Court in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) was faced with determining whether an attorney could be sanctioned for conduct which was not in the original formal charge but which was discovered in the course of the formal hearing. The attorney was charged with 12 counts of misconduct, two of which had to do with whether he solicited clients through an agent. At the hearing, the attorney and the alleged agent testified that the attorney had the agent investigate some cases where the agent's employer was the defendant. During the hearings, the formal charges were amended to add this conduct, and the attorney was ultimately disbarred on this charge only. The United States Supreme Court, after noting that the charge for which respondent was disbarred was not in the original charges made against him, concluded his procedural due process right to fair notice of the charge, was violated.
In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until after both he and Orlando had testified at length on all the material facts pertaining to this phase of this case....
These are adversary proceedings of a quasi-criminal nature. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused.

Ruffalo, 390 U.S. at 550-51, 88 S.Ct. at 1226.
In light of the above, it is beyond dispute that procedural due process and the Rules of this court require a judge be given before the formal hearing in the matter, fair notice of the charge upon which the Commission seeks to recommend discipline. Without such notice, the judge is unable to adequately prepare for or defend against the allegations of misconduct. Concomitantly, this court will not address conduct found by the Commission to be in violation of the Code of Judicial Conduct or of La. Const. Art. V, Sec. 25 where the judge was not given fair notice of that conduct in the Formal Charges.
In the instant case, Charge III cannot be fairly read as providing any notice at all to Judge Quirk that he was alleged to have engaged in a pattern of obstructing appellate review of his church sentences constituting judicial misconduct. Although Charge III did allege, as one of several underlying facts, that Judge Quirk directed Veron to file a motion to dismiss in response to Mr. Thompson's writ application, that conduct was not alleged in Charge III to be misconduct because it obstructed appellate review but rather because the hiring of Veron was without lawful authority, and resulted in an improper simultaneous representation of which Judge Quirk and Veron should have notified the third circuit court of appeal and Thompson's attorney. Additionally, the conclusion of law as to Charge III which the Commission rendered after the formal hearing relied on many alleged facts found by the Commission which were not mentioned at all in, nor even closely related to, the Charge as originally written. Based on a fair reading of the Charge as written, which interpretation is confirmed by the numerous references to the Charge by Disciplinary Counsel in pleadings filed in this case describing it as involving an alleged improper hiring of Mr. Veron resulting in a conflict of interest which should have been disclosed, we conclude Judge Quirk did not receive fair notice of any allegation of unethical conduct relating to a pattern of obstructing appellate review of his sentences. As this court in McGovern and the U.S. Supreme Court in Ruffalo similarly observed, how the allegation of obstruction of appellate review would have been met had it originally been included in the Formal Charge, and, indeed, had Judge Quirk even been aware of it during the formal hearing, *188 no one knows. Therefore, we reject the Commission's recommendation of discipline for this conduct.
Furthermore, because the Commission "decline[d] to address" and "reache[d] no conclusion" as to "Mr. Veron's appointment as Special Counsel to the City of Lake Charles" as well as Judge Quirk's "failure to inform that appellate court that Mr. Veron was the judge's private legal counsel," we are without jurisdiction to address the allegations in Charge III as written. This court's exclusive original jurisdiction under La. Const. Art. V, Sec. 25 is invoked only upon a recommendation of discipline by the Judiciary Commission. Small v. Guste, 383 So.2d 1011, 1012-13 (La.1980); In re Huckaby, 95-0041 p. 4 (La.5/22/95), 656 So.2d 292, 295. For example, in In re Daniels, 340 So.2d 301 (La.1976) and In re Whitaker, 463 So.2d 1291 (La.1985), this court declined to address those charges upon which the Commission, because of lack of evidence, did not make a recommendation. Similarly, in this case, because the Commission has not rendered a recommendation as to Charge III as written, we are without jurisdiction to impose any discipline regarding that conduct.[20]

E. CHARGE IV
Charge IV alleges Judge Quirk on August 29, 1994 and again on September 21, 1994 wrote letters in his official capacity on his official court stationery to a judge in Tennessee seeking mercy on behalf of his brother-in-law. This conduct was previously included in a Formal Charge against Judge Quirk filed on December 19, 1994. At a hearing on March 10, 1995 regarding that charge, Judge Quirk and the Commission agreed to participate in a deferred discipline agreement, the conditions of which were: (1) that Judge Quirk consent to a private reprimand by the Commission; (2) that Judge Quirk take an additional 6 hours of ethics taught as continuing legal education in the next two years; (3) that Judge Quirk write a letter of apology to the Tennessee judge apologizing for the previous communications; and (4) that Judge Quirk pay the costs associated with the investigation and hearing.[21] There is no indication by the Commission in the instant action that Judge Quirk failed to comply with the deferred discipline agreement.
Even assuming there is clear and convincing evidence to support Charge IV, because Judge Quirk was previously formally charged with this conduct and entered into and complied with a discipline agreement resulting therefrom, fundamental principles of fairness preclude this court from further imposing any discipline on Judge Quirk for this conduct.[22] It would be nonsensical, not to mention grossly unfair, for a judge to be repeatedly subject to discipline for the same previously charged and disciplined conduct each time a new complaint is filed against him. The existence of a previous charge and the discipline imposed are relevant, however, to the Commission when determining the proper discipline to be recommended and to this court when determining the proper discipline *189 to be imposed for subsequent proven ethical violations. Supreme Court Rule XXIII, § 3(d) provides:
Closed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings.
See also Professional Discipline for Lawyers and Judges, Standards Relating to Judicial Discipline and Disability Retirement, § 4.13 (1979) which permits the use of closed files (1) to show that the problem is a continuing one and not just a rare occurrence if a new complaint is based on similar occurrence, and (2) to determine the recommended sanction, whether the subsequent complaint is related or unrelated. Soileau, 502 So.2d at 1086.
Inasmuch as we have concluded there was no judicial misconduct relating to Charge I and Charge III, it is not necessary for us to address the merits of Charge IV.[23]
RECOMMENDATION REJECTED.
VICTORY, J., assigns additional concurring reasons.
VICTORY, Justice, concurring with additional reasons.
I agree wholeheartedly with the majority opinion. However, I write separately because the majority opinion does not go far enough in giving guidance to sentencing judges.
Although this Court does not decide the issue of whether mandated church attendance violates the Establishment Clause of the first Amendment to the United States Constitution, it is clear that offering church attendance as a choice along with non-religious conditions of probation, such as community service, is constitutional. See Michael G. Honeymar, Note, Alchoholics As a Condition of Drunk Driving Probation: When Does It Amount to Establishment of Religion?. 97 Colum. L.Rev. 437 (1997); O'Connor v. State of California, 855 F.Supp. 303, 308 (C.D.Cal. 1994) (in holding that requiring a person to attend a self-help program, where principle program available is Alcoholics Anonymous, does not violate the Establishment Clause, states that "[s]ignificant to this Court's decision is that the individual has a choice over what program to attend"). Indeed, during oral arguments Special Counsel for the Judiciary Commission of Louisiana acknowledged that if defendants were offered the choice of church attendance or performing other non-religious conditions of probation, such a solemnity service, there would be no constitutional or ethical violation.
NOTES
[*] Traylor, J., not on panel. See Rule IV, Part 2, Section 3.
[1] The First Amendment to the United States Constitution provides, in pertinent part:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....
[2] Canon 2 A, effective January 1, 1976, and prior to its amendment on July 8, 1996, provided: "A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The amendment to this Canon in 1996 provided that the word "should" was changed in each instance that it occurred to "shall."
[3] Canon 3 A(1), effective January 1, 1976 and prior to its amendment on July 8, 1996, provided: "A judge should be faithful to the law and maintain professional competence in it. A judge should be unswayed by partisan interests, public clamor, or fear of criticism." The amendment to this Canon in 1996 provided that the word "should" was changed in each instance that it occurred to "shall."
[4] Canon 3 A(4), effective January 1, 1976 and prior to its amendment on July 8, 1996, provided: "A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials or others subject to the judge's direction and control to do so." The amendment on July 8, 1996 provided that the word "shall" should be substituted for "should" in each instance that it occurred and deleted the illustrative phrase "including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status."
[5] Canon 1 provided, prior to its amendment on July 8, 1996: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence." The amendment on July 8, 1996 provided that the words "should be" before "construed and applied" were changed to "are to be."
[6] The substance of this charge was previously included in a charge against Judge Quirk filed on December 19, 1994. At a hearing on March 10, 1995 regarding that charge, Judge Quirk and the Commission agreed to participate in a deferred discipline agreement, the conditions of which were: (1) that Judge Quirk consent to a private reprimand by the Commission; (2) that Judge Quirk would take an additional 6 hours of ethics taught as continuing legal education in the next two years; (3) that Judge Quirk would write a letter of apology to the Tennessee judge apologizing for the previous communications; and (4) that Judge Quirk pay the costs associated with the investigation and hearing. There is no indication by the Commission in the instant action that Judge Quirk failed to comply with the terms of the deferred discipline agreement.
[7] The Commission concluded that Charge II was not proven by clear and convincing evidence. This court's disciplinary power can only be invoked upon the judiciary commission's recommendation of discipline with respect to a charge. See In re Huckaby, 95-O-0041 p. 4 (La.5/22/95), 656 So.2d 292, 295 and La. Const. Art. V, Sec. 25(C)("On recommendation of the judiciary commission, the supreme court may" discipline a judge.), and the discussion, infra. Accordingly, we will not address this Charge.
[8] The Commission did not submit a separate recommendation for discipline with respect to the misconduct as alleged and found to be proven by clear and convincing evidence in Charge IV.
[9] Judge Quirk testified in the formal hearing that in all of these cases, he would ask the defendants if they went to church, and, after they indicated in the affirmative, only then order church as an attendance of probation.
[10] See supra note 1.
[11] La. Const. Art. I, Sec. 8 provides: "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof."
[12] Judicial independence is necessary so that "judges can be free to make decisions according to their consciences without undue pressure or influence." Jeffrey M. Shaman, The Impartial Judge: Detachment or Passion?, 45 DePaul L.Rev. 605, 617 (1996).
[13] See Harrod v. Illinois Courts Commission, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53, 65 (1977) where the court rejected the judge's argument that an erroneous interpretation of a statute can never be subject to a finding of judicial misconduct and was properly correctable on appeal.

The fact that a judge's misconduct may be remedied by the appeal of an individual defendant does not prevent the same conduct from being the subject of a disciplinary action. Although all misconduct arising during the course of a judicial proceeding may be the subject of an appeal, an individual defendant's vindication of personal rights does not necessarily protect the public from a judge who repeatedly and grossly abuses his judicial power.
14 Ill.Dec. at 260, 372 N.E.2d at 65.
[14] In the following cases, legal error constituted grounds for a finding of judicial misconduct. However, at the time the judicial actions were taken, they were clearly illegal under existing law. For example, in In re Sanchez, 9 Cal.3d 844, 109 Cal.Rptr. 78, 512 P.2d 302 (1973), the California Supreme Court found its was judicial misconduct for a judge to allow a bondsman to determine the amount of bail to be fixed on blank orders given to the bondsman by the judge. Clearly, under the law, only the judge could set and fix the amount of bail. In In the Matter of Sardino, 58 N.Y.2d 286, 461 N.Y.S.2d 229, 448 N.E.2d 83 (1983), it was judicial misconduct for a judge to consistently fail to inform the accused of the right to counsel, to consistently fail to conduct even a minimal inquiry into whether the accused was entitled to assigned counsel, to post bail without reference to the statutory standards to be considered, and to order defendants held without bail where bail was required as a matter of law, all in violation of clear constitutional principles and statutes. In In the Matter of McGee, 59 N.Y.2d 870, 465 N.Y.S.2d 930, 452 N.E.2d 1258 (1983), it was judicial misconduct for a judge to routinely fail to advise defendants appearing before him of their constitutional rights including the right to consult an attorney, to pronounce a woman who had appeared in court guilty without informing her of the charge against her or advising her of her right to counsel, to coerce guilty pleas, and to fail to comply with statutory record-keeping requirements. See also In the Matter of LaBelle, 79 N.Y.2d 350, 582 N.Y.S.2d 970, 591 N.E.2d 1156 (1992) where it was judicial misconduct for a judge to repeatedly fail to order recognizance or bail as required by the plain reading of two statutes and admitted to be illegal by the judge in his stipulation of facts before the Commission. In In re King, 409 Mass. 590, 568 N.E.2d 588 (1991), it was judicial misconduct for a judge's primary consideration in his setting of bail to have been the fact that the racial group to which the defendants belonged "voted against" his brother in an election. It was clearly judicial misconduct in McCullough v. Commission on Judicial Performance, 49 Cal.3d 186, 260 Cal.Rptr. 557, 776 P.2d 259 (1989) for a judge to tell the jurors sitting on a criminal case to "go in that room and find the defendant guilty," insofar as this deprived the defendants of his fundamental right to be tried by a jury, Id., 260 Cal.Rptr. 560, 776 P.2d at 262, and to order two defendants to stand trial in the absence of their attorneys without conducting a statutorily required hearing in order to determine whether there was good cause for the attorney to have failed to timely file a request for a continuance. See also In the Matter of Inquiry Concerning a Judge, 265 Ga. 843, 462 S.E.2d 728 (1995)( where it was found to be judicial misconduct for a judge to deny appeal bonds to criminal misdemeanor defendants, each of whom was entitled under the law to be granted appeal bonds); and In the Matter of Reeves, 63 N.Y.2d 105, 480 N.Y.S.2d 463, 469 N.E.2d 1321 (1984)(it was judicial misconduct for the judge to have a repeated pattern of failing to advise litigants of their right to counsel and right to appointed counsel.). See also Stern, supra, 7 Pace L.Rev. at 322-32.
[15] As noted in Benoit, establishing a clear standard serves the three purposes of informing the citizenry that their judges are being held to a defined and definable level of conduct, enhancing the integrity of the disciplinary process by providing consistency to these types of cases, and informing the judiciary of the ethical standard to which its legal decisions will be held. 487 A.2d at 1163.
[16] Certainly, these guidelines are by no means intended to shield from review those judicial decisions or actions which, because of the discretion vested in the judge in certain situations, are legal but nevertheless, under certain circumstances, violate the Code of Judicial Conduct or La. Const. Art. V, Sec. 25. Examples of these types of discretion-intensive decisions are the setting of bail, the imposition of sentences and rulings on various motions. For example, if a judge routinely gives only members of a particular racial group sentences on the high end of the sentencing guidelines, this may be shown to be judicial misconduct even though the sentences are technically legal within the scope of the judge's discretion. See, e.g., In re Lemoine, 96-2116 p. 3 (La.4/4/97), 692 So.2d 358, 360 ("[V]iolation of law is not a necessary prerequisite for finding misconduct warranting judicial discipline. Rather, even absent deviation from some statutory provision ... a judge's misconduct may be so serious as to constitute that type of `willful misconduct relating to his official duty, willful and persistent failure to perform his duty, [or] persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute ...' and warrant discipline under Art. V, § 25(C).")
[17] The Commission argues that there is in fact a precedent set on this issue by the first circuit court of appeal in State v. Morgan, 459 So.2d 6 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1263 (La.1985). In that case, the first circuit court of appeal held that making church attendance a condition of probation violates the First Amendment of the United States Constitution and Article I, Section 8 of the Louisiana Constitution. Judge Quirk's court, however, does not lie within the supervisory jurisdiction of the first circuit, but rather the third circuit court of appeal. Although the decision of a court of appeal which does not provide appellate review to a particular trial court is certainly persuasive authority for that trial court to consider when reaching a decision on a legal issue, we have never held such a decision is binding on that trial court. This is only logical because a trial court's decision can only be reversed for error by the court of appeal whose jurisdiction encompasses the trial court, or by this court. Thus, although a trial court's decision may constitute legal error under the jurisprudence of the first circuit, this is irrelevant from the viewpoint of the trial judge, for it may not constitute legal error in the third circuit should the third circuit choose an interpretation different from its sister circuit. That Judge Quirk's interpretation of the Establishment Clause differed from that of the first circuit is insufficient to constitute judicial misconduct where Morgan itself is subject to varying interpretations, where neither the third circuit court of appeal, this court, nor the United States Supreme Court has ever addressed the issue at all, and where Judge Quirk reasonably believed some decisions from other states and lower federal courts supported his practice.

The Commission also asserts that with the third circuit court of appeal's writ denial in the case of State v. Thomas Kelly, 94-01561 (3d Cir. 2/24/95), Judge Quirk was then put on notice that the third circuit believed his sentencing practices were unconstitutional, and he should have stopped at that time. In Kelly, one of the defendants who did not object at the time to his sentence of church attendance as a condition of probation later filed a writ application with the third circuit court of appeal challenging the constitutionality of the sentence under the First Amendment. Upon being notified of defendant's objection to the sentence, Judge Quirk resentenced Kelly and removed the condition of church attendance. The court of appeal subsequently dismissed the writ application as moot with the following notation:
WRIT NOT CONSIDERED: The city court did not lack jurisdiction over Relator's case when the court deleted a condition of Relator's probation. See La.Code Crim. P. arts. 882(A), 894(4), 896 and 916(3). Additionally, Relator's presence was not required since the city court did not exercise any sentencing discretion. State v. Champagne, 506 So.2d 1377, 1379 (La.App. 3d Cir.1987). Having found the city court's action on December 13, 1994 to be proper, we find the city court's deletion of the condition of probation that the Relator attend church once a week has rendered Relator's writ application moot. For these reasons, we will not consider the merits of Relator's application.
We do not believe the above constitutes a binding precedent which would have had the effect of rendering any subsequent church sentence given by Judge Quirk "illegal" under the third circuit's jurisprudence which provides the appellate jurisdiction for his court. First, and most importantly, a writ denial is not authoritative and does not make law. The denial by the court of appeal of a writ application seeking to invoke that court's supervisory jurisdiction "neither blesses nor adopts the [lower court's] factual determination or expressions of law." McClendon v. State, Dept. of Transportation and Development, 94-0111, p. 2 (La.9/6/94), 642 So.2d 157, 158; Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La. 1983). A denial of supervisory review does not constitute the court's considered opinion on the allegations made in a writ application but is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction in that case. Second, the court of appeal cited four different Criminal Code of Procedure articles to support its decision, two of which authorized the modification of the sentence regardless of whether it was illegal, La.C.Cr. P. arts. 894(4) and 896.
[18] We want to make it very clear that this opinion does not in any way decide or even reflect a position as to whether or not the giving of a sentence where church attendance is a condition of probation under the circumstances presented in this case is, in fact, unconstitutional. Nor should this opinion be interpreted as constituting a stamp of approval by this court on the continuation by Judge Quirk of the instant sentencing practices. Rather, all we conclude, with respect to Charge I, is that at the present time, Judge Quirk's use of church attendance as a condition of probation does not constitute judicial misconduct under any of the Canons of our Code of Judicial Conduct or under Art. V, Sec. 25 of the Louisiana Constitution.

Without expressing any comment on whether the following is necessary to render such sentences constitutional or will even accomplish such a result, we believe, however, Judge Quirk's sentencing practices would perhaps be less constitutionally questionable if he was to offer to defendants an alternative to church attendance such as attendance at a secular morality/ethics program or the performance of community service.
[19] However, because the proceeding is not a criminal prosecution, the judge is not afforded the full due process rights accorded a criminal defendant and is only entitled to the minimum standards of due process necessary for a full and fair hearing. In re Whitaker, 463 So.2d 1291, 1296 (La.1985).
[20] Because Judge Quirk did not receive proper notice of a charge of engaging in a pattern of obstructing appellate review, discipline may not be imposed on Judge Quirk for this conduct, and it is unnecessary for us to reach the merits of that allegation. Likewise, because the Judiciary Commission did not render a recommendation on the conduct of Judge Quirk under Charge III as written, we are without jurisdiction to impose discipline on the conduct underlying that charge, and it is unnecessary for us to reach the merits of the allegations in Charge III. However, given the serious nature of these allegations, which are now a matter of public record, we find justice would not be served if we did not make the observation in this opinion that a thorough review of the record reveals several of the findings of fact made by the Judiciary Commission are not supported by clear and convincing evidence. Furthermore, those findings of fact which are supported by clear and convincing evidence do not constitute a violation of any Canon of the Code of Judicial Conduct or of La. Const. Art. V, Sec. 25.
[21] We need not address at this time whether the Judiciary Commission has authority to enter into a "deferred discipline agreement" under the powers given it in La. Const. Art. V, Sec. 25 and Supreme Court Rule XXIII to investigate complaints, conduct hearings, and make recommendations of discipline to this court.
[22] The constitutional guarantee against being twice put in jeopardy of life or limb for the same offense does not, however, apply to a disciplinary proceeding against a judge. In re Soileau, 502 So.2d 1083, 1086 (La.1987).
[23] Likewise, because we find there has been no violation of the Code of Judicial Conduct or of La. Const. Art. V, Sec. 25, it is unnecessary for us to reach the argument, urged by Judge Quirk, that combining prosecutorial and adjudicative functions in the Judiciary Commission violates his due process rights.