737 So.2d 1284 (1999)
In re Judge Ulysses "Gene" THIBODEAUX.
No. 99-O-0014.
Supreme Court of Louisiana.
July 7, 1999.
*1285 Steven Robert Scheckman, New Orleans, Special Judiciary Counsel.
Nancy E. Rix, Hugh M. Collins, Ph.D., New Orleans, Counsel for Judiciary Commission.
James Paul Lambert, Lafayette, Counsel for Respondent.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
VICTORY, J.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (the "Judiciary Commission") that Respondent, Judge Ulysses "Gene" Thibodeaux, of the Third Circuit Court of Appeal, State of Louisiana, be publicly censured and ordered to reimburse to the Judiciary Commission the costs incurred in the investigation and prosecution of this case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and law, and determined that Judge Thibodeaux violated Canons 1,[1] 2 A,[2] and 2 B,[3] and engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of 1974 La. Const. art. V, § 25 C. After reviewing the record before us, we conclude that the Judiciary Commission's recommendation of discipline should be rejected.

FACTS AND PROCEDURAL HISTORY
On August 26, 1997, the Judiciary Commission filed Formal Charges, which were amended on July 2, 1998, consisting of five charges against Judge Thibodeaux. Charge I has been deleted from the record as the Judiciary Commission found that the allegations set forth in Charge I were not proven by clear and convincing evidence. Charge II alleged that on June 4, 1996, Judge Thibodeaux wrote a letter to the general manager of Players Island Casino on his official stationery expressing his appreciation for his efforts in planning and executing his wedding reception, in violation of Canon 2 B. Charges III, IV and V arose out of Judge Thibodeaux's involvement as a defendant in the case of *1286 Stevens v. Thibodeaux, No. 94-121 (City Court of Lake Charles) and were the subject of a previously closed Judiciary Commission file which resulted in the Judiciary Commission issuing a letter of warning and counseling to Judge Thibodeaux on November 28, 1994.
The parties entered into a Stipulation of Facts on July 30, 1998, and Judge Thibodeaux and his wife testified at the hearing on August 29, 1998. On January 5, 1999, the Judiciary Commission issued its Findings of Fact and Conclusions of Law, in which it found that Charge II was proven by clear and convincing evidence. As to the charges that were the subject of the previously closed judiciary file, the Judiciary Commission made the following finding:
A majority of the Commission found the conduct of Judge Ulysses "Gene" Thibodeaux as alleged in Formal Charges III, IV and V to have been proven by clear and convincing evidence. That finding is hereby used by the Commission to show in the case of Charge V, a pattern of misconduct, and with respect to Charges III and IV, to support a recommended sanction, made pursuant to Charge II (which was not the subject of a closed file). (Emphasis in the original.)
The Judiciary Commission recommended that this Court publicly censure Judge Thibodeaux and order him to pay the costs associated with this proceeding in the amount of $3,318.60.

DISCUSSION
This Court has original jurisdiction in judicial disciplinary proceedings. La. Const. art. V, § 25 (C). Therefore, this Court has the power to make original determinations of fact based upon the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172, 176.
Under its supervisory authority over all lower courts, this Court adopted the Code of Judicial Conduct, effective January 1, 1976. The Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as the basis for the disciplinary actions provided for by La. Const. art. V, § 25 (C). In re Quirk, supra; In re Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019, 1021; In re Decuir, 95-0056 (La.5/22/95), 654 So.2d 687, 692. The standard of proof in judicial discipline cases is the clear and convincing standard. In re Quirk, supra at 176; In re Johnson, 96-1866 (La.11/25/96), 683 So.2d 1196, 1199; In re Huckaby, 95-0041 (La.5/22/95), 656 So.2d 292, 296. This standard requires that the level of proof supporting the Judiciary Commission's factual findings must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt. Id.

CHARGE II
On June 1, 1996, Judge Thibodeaux held his wedding reception at the Players Island Casino in Lake Charles. On June 4, 1996, Judge Thibodeaux wrote a letter on his official court stationery to the General Manager of the Players Island Casino thanking him for the manner in which his wedding reception was handled. The signature block of the letter read: "Gene & Phyllis Thibodeaux." Subsequently, a dispute arose between Judge Thibodeaux and the casino regarding the quality, quantity, and costs of the food and beverages served at the reception; however, Judge Thibodeaux claims he was unaware of any of these problems until after he wrote the letter.
As a result of an anonymous phone call received on June 11, 1996, raising questions about Judge Thibodeaux's wedding reception, the Judiciary Commission initiated this matter against Judge Thibodeaux on its own motion, filing Formal Charges consisting of two charges. The Judiciary Commission found that Charge I, which has been deleted from the record, was not proven by clear and convincing evidence. Charge II alleged that Judge Thibodeaux *1287 violated Canon 2 B (1976) by writing the letter on his official court stationery.
Judge Thibodeaux admitted writing the letter, stating:
I admit that it was done on court stationery. It was sent to a friend of mine, thanking him for the occasion; not to influence any-or exert any leverage on him to say: Hey, look, cut me a deal of some sort. Yeah. So I admit-and, you know, Players may have made that-that was, you know, not too prudent, no doubt about it.
The Judiciary Commission found that this conduct violated Canon 2 B of the 1976 Code of Judicial Conduct, which provided in part that "[a] judge should not lend the prestige of judicial office to advance the private interest of others;...." The Judiciary Commission found as follows:
Sending this letter to [the General Manager] lent the prestige of judicial office to advance the private interest of Judge and Mrs. Thibodeaux, in violation of Canon 2 B (1976). Even accepting Judge Thibodeaux's assertion that he did not yet know of a dispute about the cost of his wedding reception when he wrote the June 4, 1996 letter to [the General Manager], a dispute actually arose. Players Casino was potentially, if not actually, influenced by Judge Thibodeaux's judicial status, as a result of his communication to them on official stationery.
We have previously addressed the use of official court stationary by state court judges to write letters of recommendation regarding sentencing to federal court judges. However, this is the first time we have addressed this issue in the context of a personal "thank you" note to an acquaintance.
In In re Decuir, supra, where the judge stipulated that he wrote a letter on temporary personal judiciary stationery, which identified him as "Judge, Court of Appeal," to a United States District Judge concerning the sentencing of a friend in a criminal case and admitted that this violated Canon 2 B, this Court publicly censured him. However, this sanction resulted from the judge's violation of Canon 2 B as well as other Canons relative to more serious charges.
More recently, in In re Marullo, supra, Judge Marullo, a state court criminal judge, wrote a letter to a United States District Judge recommending leniency in the sentencing of Anthony Carollo, a man who had pled guilty in the federal judge's court to a conspiracy involving an illegal video poker operation. The letter was written at the request of Carollo's attorney. A majority of this Court noted that at the time the letter was written, Canon 2 B was unclear as to what was ethically permissible, but that Canon 2 B was amended in 1996 to clarify the confusion concerning the propriety of judges writing character reference letters on official judicial stationery. 692 So.2d at 1022. Nevertheless, the majority held that the judge's conduct was still violative of Canon 2 B prior to its amendment. Id. However, because Judge Marullo had a 22-year judicial career free of any disciplinary violations, and had acted in good faith and not for personal gain, the majority found that official judicial discipline was not warranted.[4]Id. at 1023. The majority held that "all violations of the Canons of the Code of Judicial Conduct do not always rise to the level of sanctionable misconduct" and that "[w]hile we certainly do not condone the conduct herein complained of, we recognize that sanctionable misconduct `is more than that conduct which comes about by reason of error of judgment or lack of diligence.'" Id. (citing State ex rel. Gremillion v. O'Hara, 252 La. 540, 211 So.2d 641 (1968)).
At the time Judge Thibodeaux wrote the letter to Players Casino, Canon 2 B stated in part that "[a] judge should not lend the *1288 prestige of judicial office to advance the private interest of others." It did not contain the prohibition against advancing the private interests of "the judge or others" found in the 1996 amendment. The Judiciary Commission found that the letter was intended to advance the private interests of Judge Thibodeaux and his wife, his wife being the necessary "other" under the pre-1996 amendment. However, in our view, the evidence fails to prove that Judge Thibodeaux's "thank you" note to the casino regarding the wedding was written to advance the interests of his wife (or Judge Thibodeaux) as contemplated by that Canon, especially in light of the fact that the recipient of the letter was already well aware that Judge Thibodeaux was an appellate judge, Judge Thibodeaux sought no favor by the letter, and the Judiciary Commission concedes that he probably was unaware that a dispute would arise regarding the food and beverages provided at the reception at the time he wrote the letter.[5]
Thus, we do not agree that Judge Thibodeaux's decision to write a "thank you" letter to the casino under these circumstances was a violation of Canon 2 B (1976). Accordingly, we find that the Judiciary Commission has not proven the allegations of Charge II by clear and convincing evidence.

CHARGES III-V
Supreme Court Rule XXIII, § 3(d) provides: "[c]losed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings." We addressed the use of such files in subsequent proceedings in In re Soileau, and held that "the constitutional guarantee against being twice put in jeopardy of life or limb for the same offense does not apply to a disciplinary proceeding." 502 So.2d 1083, 1086. In Soileau, we also adopted as guidelines for the use of closed files the Professional Discipline for Lawyers and Judges, Standards Relating to Judicial Discipline and Disability Retirement, § 4.13 (1979), which permits the use of closed files:
(1) to show that the problem is a continuing one and not just a rare occurrence if a new complaint is based on a similar occurrence, and
(2) to determine the recommended sanction, whether the subsequent complaint is related or unrelated.
In re Soileau, supra at 1086; In re Quirk, supra at 189.
Because we have concluded that there was no judicial misconduct relative to Charge II, it is not necessary for us to address the merits of Charges III, IV and V, which were the subject of a previously closed Judiciary Commission file. See In re Quirk, supra at 189.

DECREE
For the reasons stated herein, the recommendation of the Judiciary Commission, that Judge Ulysses "Gene" Thibodeaux be publicly censured and ordered to pay the costs of this proceeding, is rejected.
RECOMMENDATION REJECTED.
JOHNSON, J., subscribes to the opinion and assigns additional reasons.
JOHNSON, J., concurring.
I concur in the result reached by the majority to reject the Judiciary Commission's recommendation of discipline, and I write separately to express my views on the issue of anonymous complainants.
The Judiciary Commission initiated this matter and filed Formal Charges against Judge Thibodeaux based on an anonymous phone call raising questions about the Judge's wedding reception. Under the rules for the conduct of business of the *1289 Judiciary Commission, complaints of alleged misconduct or disability of any judge should be written and signed by the complainant. However, the Commission may consider complaints from whatever source, including anonymous complaints. JCL Rule III.
In my view, the identity of the complainant aids in determining the reliability of the complainant and the allegations made. Allowing complainants to keep their identity anonymous, opens the door for falsified allegations, political and personal vendettas, and defamatory statements. Anonymous complainants could be political opponents out to damage the reputation of an incumbent judge, parties to lawsuits who were on the losing side, or any other person with "an axe to grind." Often times knowing the identity of the complainant gives us information needed to test the motive and truthfulness of the allegations.
This Court is charged with making original determinations of fact in judicial disciplinary proceedings. In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172, 176. The identity of the anonymous complainants would certainly assist me in making such determinations. Furthermore, if the anonymous informant turns out to be a person seeking political or personal gain from making the complaint, then the allegations could be resolved before a public investigation is instituted. I, for one, am of the opinion that the identity of anonymous complainants should be disclosed.
NOTES
[*] Knoll, J., not on panel, recused. Rule IV, Part 2, § 3.
[1] Canon 1 (1976) states that "[a]n independent judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
[2] Canon 2 A (1976) states that "A judge should respect and comply with the law and shall act all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
[3] Canon 2 B (1976) states:

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of judicial office to advance the private interest of others; nor should a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.
Effective July 8, 1996, Canon 2 B was amended as follows:
A judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness. Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. Letters of recommendation may be written only on private stationery which does not contain any official designation of the judge's court, but the judge may use his or her title. A judge shall not initiate the communication of information in any court or disciplinary proceeding, but may provide such information for the record in response to a formal request by a court or disciplinary agency official. (Amendments underlined.)
[4] This author of this opinion dissented in Marullo, being of the view that Judge Marullo's conduct rose to the level of sanctionable misconduct. 692 So.2d at 1024.
[5] Judge Thibodeaux testified as follows:

Q Were you hoping to gain anything out of writing this letter to [the general manager]?
A No. [The general manager], as you saw, was at our wedding. He was an invited guest. I knew [him] on a very personal basis. So I wasn't asking that he do a favor. In fact, I didn't even realize there was a favor to be done at that point, because I didn't realize what the costs were.