767 So.2d 2 (2000)
In re Judge Pamela Taylor JOHNSON.
No. 00-O-0392.
Supreme Court of Louisiana.
June 30, 2000.
Rehearing Denied August 31, 2000.
*3 Nancy E. Rix, Commission Legal Counsel, Hugh M. Collins, PhD., Chief Executive Officer, for Judiciary Commission of Louisiana.
Steven Robert Scheckman, Special Counsel, Mary Frances Whitney, Asst. Special Counsel, for Judiciary Commission of Louisiana.
Christopher DuPont Matchett, Pamela T. Taylor, Baton Rouge, Counsel for Respondent.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
PER CURIAM.[*]
This matter comes before this court on the recommendation of the Judiciary Commission of Louisiana ("Commission") that Judge Pamela Taylor Johnson, a judge of the East Baton Rouge Parish Juvenile Court, State of Louisiana, be publicly censured and ordered to reimburse the Commission for costs incurred in the investigation and prosecution of this case. After reviewing the record before us, we conclude the Commission's recommendation of discipline should be rejected.

FACTS AND PROCEDURAL HISTORY
After receiving an anonymous complaint, the Commission commenced an investigation of Judge Johnson and ultimately filed *4 two formal charges against her.[1] Charge I alleged that Judge Johnson prepared an application for a juvenile drug court planning grant and listed certain persons (such as another judge, the district attorney, and the sheriff) as stakeholders, without first obtaining their permission. Charge II alleged that Judge Johnson authorized certain court personnel to attend educational seminars that were either unrelated or marginally related to their job positions.
After a formal hearing, the Commission found these charges were proven by clear and convincing evidence, and determined that Judge Johnson's conduct violated the Code of Judicial Conduct. The Commission recommended this court publicly censure Judge Johnson and order her to pay the costs associated with this proceeding in the amount of $4,581.83.

DISCUSSION
This court has original jurisdiction in judicial disciplinary proceedings. La. Const. art. V, § 25(C). Therefore, this court has the power to make original determinations of fact based upon the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Commission. In re: Thibodeaux, 99-0014 (La.7/7/99), 737 So.2d 1284 (citing In re: Quirk, 97-1143 (La.12/12/97), 705 So.2d 172); In re: Hunter, 98-0446 (La.7/8/98), 715 So.2d 1188 (citing In re: Decuir, 95-0056 (La.5/22/95), 654 So.2d 687; In re: Whitaker, 463 So.2d 1291 (La.1985)).
With regard to Charge I, the record indicates the federal grant application was prepared on an expedited basis at the direction of Judge Johnson by an employee of the Department of Juvenile Services who had experience in such matters. The employee listed the names of persons on the grant application who had attended or were invited to previous juvenile task force meetings, although it later turned out that some of these persons did not give permission for their names to be used.
We conclude any mistakes made in connection with the grant application were made in good faith. While Judge Johnson may have been negligent in failing to contact the persons listed in the grant application to verify their agreement to participate, we cannot say the Commission proved by clear and convincing evidence that her actions rise to the level of ethical misconduct.
Turning to Charge II, the record establishes that on three separate occasions in 1995 and 1996, Judge Johnson authorized court employees, including her minute clerk and the court's receptionist, to attend educational seminars which were not specifically related to the job functions performed by those employees.
Although Judge Johnson unquestionably exercised poor judgment in allowing court staff to attend these seminars, we find it is significant her actions occurred shortly after she first assumed the bench, suggesting her decisions were the product of inexperience.[2] She has acknowledged her error, and has taken steps to avoid similar problems in the future. Based on these findings, we conclude the Commission has failed to prove by clear and convincing evidence that Judge Johnson's actions rise to a level warranting official discipline by this court.

DECREE
For the foregoing reasons, the recommendation of the Judiciary Commission of Louisiana that Judge Pamela Taylor Johnson be publicly censured and ordered to *5 pay the costs of these proceedings is rejected.
RECOMMENDATION REJECTED.
JOHNSON, J., Concurring.
I write separately to fully explain my position regarding the charge that Judge Johnson committed ethical wrongdoing as the result of material misstatements of fact in an application for a drug court planning grant. The charge stems from the listing of several elected officials in Baton Rouge as "stakeholders" in a federal drug court planning grant application, allegedly without their knowledge or consent.
The grant application at issue was submitted to the U.S. Department of Justice, Office of Justice Programs' Drug Courts Program on November 29, 1996 and titled "Proposal for a Juvenile Drug Court Planning Grant." The grant application contained several supporting documents, including a Detailed Budget Worksheet and a Program Narrative. Under Section III of the Program Narrative, twenty-four (24) "stakeholders" or community partners were identified.
The list of "stakeholders" was taken from the list of persons who were invited to and, either attended, or sent a representative to attend, one or more of the meetings of the Juvenile Justice Community Task Force ("Task Force"). Their names were included based on a good-faith belief that they had agreed to participate in the program and supported the Task Force, which was organized to deal with juvenile justice issues. Considering Judge Johnson's good-faith belief that the persons listed had agreed to participate in the drug court planning process, the time constraints in applying for the grant, and the fact that Judge Johnson did not actually prepare the program narrative, I do not agree with the majority's conclusion that these persons were listed without their knowledge or consent.
LEMMON, J., Dissenting.
The brochure for the Nuts and Bolts Seminar in Sandestin does not state the court officials for whom the program was designed, but the agenda for the two-and-one-half-day seminar appeared to target judges, court administrators and possibly senior staff attorneys, as well as prosecutors, public defenders and ranking law enforcement and probation officials. The program certainly was not designed for an entire staff of a juvenile judge, and clearly not for a receptionist. Public perception likely would be that the respondent judge used this as an opportunity for a staff trip at state expense to an exotic location.
Taking the staff to a seminar on political campaigns during the court's working days, while the employees were being paid with public funds, was totally without justification. To her credit, the respondent judge, upon recognizing the nature of the seminar, did not seek reimbursement of the registration fees.
Finally, the brochure for the two Reno seminars, entitled Summer College: The Role of the Judge and Basic Juvenile Justice Management Institute, indicated that the programs were designed for juvenile and family court judges and for court managerial and supervisory personnel, and not for minute clerks or receptionists.[1] They were not designed as an opportunity for a judge to take his or her entire staff on a week-long trip to an exotic location on public funds. Taking an entire staff to such a program at the expense of the taxpayers appears to the public to be an unjustifiable perk of governmental employment and was at best an exercise of extremely poor judgment in administering public funds.
Such misuse of public funds by a relatively new judge perhaps would have been better handled by the judicial conduct authorities *6 with a stern warning and close supervision. However, the matter is now before this court on a recommendation for a minimum sanction, and I cannot in good conscience say that such a sanction is not warranted.
VICTORY, J., dissenting.
I respectfully dissent. In my view, Judge Johnson's repeatedly allowing the misuse of public funds and the listing of four public officials under her signature on a proposed planning grant as "enthusiastically [agreeing] to serve on the planning committee" when none had even been contacted, much less agreed to serve, were shown to be ethical violations by clear and convincing evidence and warrant the censure of this court as recommended by the Judiciary Commission.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part II, § 3.
[1] Two other formal charges were filed against Judge Johnson. However, the Commission found insufficient evidence to support these formal charges, and they were later removed from the record.
[2] Judge Johnson assumed the bench on January 1, 1995 to fill an unexpired term. In October 1996, she was reelected to a full six-year term.
[1] The parties stipulated before the Commission that the program was not intended for persons in essentially clerical positions.