959 So.2d 859 (2007)
In re Judge Martha SASSONE.
No. 2007-O-0651.
Supreme Court of Louisiana.
June 29, 2007.
Rehearing Denied July 31, 2007.
*861 Office of Special Counsel, Steven Robert Scheckman, Special Counsel, Brett Edward Emmanuel, Assistant Special Counsel, for applicant.
Dane S. Ciolino, Richard Terrell Simmons, Jr., Metairie, for respondent.
Nancy E. Rix, Commission Counsel.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
JOHNSON, Justice
This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana ("Commission") that Judge Martha Sassone ("Judge Sassone") of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, be suspended without pay for sixty days, and that she be ordered to reimburse the Commission's costs incurred in the investigation and prosecution of this case. After a review of the record, we find that Judge Sassone's conduct violated Canons 1, 2A, 3A(1) and 3A(3) of the Code of Judicial Conduct, as well as the constitutional standard articulated in La. Const. art. V, § 25(C). We additionally find that the recommended discipline is warranted.

FACTS AND PROCEDURAL HISTORY
Judge Sassone assumed the office of district judge on January 1, 1991, and was re-elected in 1996 and 2002. In 2003 and 2004, the Commission received several complaints regarding misconduct on the part of Judge Sassone. After an initial investigation into these complaints, the Commission determined that formal charges against Judge Sassone were warranted.
On April 4, 2006, the Commission filed a Formal Charge against Judge Sassone based upon five counts of ethical misconduct, alleging that her conduct violated Canons 1,[1] 2 A,[2] 3 A(1), and 3 A(3)[3] of the *862 Code of Judicial Conduct. The Commission further alleged that Judge Sassone engaged in willful misconduct relating to her official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const. art. V, § 25(C).[4]
A hearing on the merits was held before the Commission on February 22-23, 2007. On March 30, 2007, the Judiciary Commission rendered its findings of fact and conclusions of law pursuant to those proceedings. As to Counts I through IV, the Commission found that Judge Sassone violated Canons 1, 2 A, 3 A(1), and 3(A)(3) of the Code of Judicial Conduct, as the result of her "inexcusable failure to follow the law regarding contempt as to two defendants and with regard to modifying bail bonds as to three defendants, and further, due to her intemperate judicial behavior." The Commission further determined that as to Counts I through IV, Judge Sassone violated La. Const. art. V, § 25(C) by engaging in willful misconduct relating to her official duty, by her willful and persistent failure to perform her judicial duty in an appropriate manner, and by her persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Based on these findings, the Commission recommended that Judge Sassone be suspended without pay for sixty days, and be ordered to reimburse the Commission the $2,247.17 in costs incurred in the investigation and prosecution of this case.

DISCUSSION
This Court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const. Art. V, § 25(C). This Court has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re King, XXXX-XXXX (La.10/21/03), 857 So.2d 432, 445.
This Court, pursuant to its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, effective January 1, 1976, and amended July 8, 1996. This Code is binding on all judges, and violations of its Canons may serve as the basis for the disciplinary action provided *863 for by La. Const. art. 5, § 25(C). In re Jefferson, XXXX-XXXX (La.1/19/00), 753 So.2d 181; In re Bowers, 98-1735, p. 7 (La.12/1/98), 721 So.2d 875, 879; In re Quirk, 97-1143, p. 4 (La.12/12/97), 705 So.2d 172, 176; In re Marullo, 96-2222, p. 3 (La.4/8/97), 692 So.2d 1019, 1021; In re Decuir, 95-0056, p. 7 (La.5/22/95), 654 So.2d 687, 692.
The charges against a judge must be proved by clear and convincing evidence before this Court can impose discipline. In re Hughes, XXXX-XXXX (La.4/22/04), 874 So.2d 746, 760. This standard requires that the level of proof supporting the charge or charges against a judge must be more than a mere preponderance of the evidence, but less than beyond a reasonable doubt. In re Jefferson, 753 So.2d at 185; In re Bowers, 98-1735 at p. 7, 721 So.2d at 880; In re Quirk, 97-1143 at p. 4, 705 So.2d at 176; In re Huckaby, 95-0041 at p. 6, 656 So.2d at 296.

Count I
In Count I, Judge Sassone was charged with abusing her authority as a judge by exceeding her contempt power and/or abusing such contempt power in State v. Troy McCloud. Judge Sassone held Mr. McCloud in direct contempt of court on two separate occasions. She sentenced him to three consecutive six-month sentences in the parish prison for the first incident, and six months in the parish prison for the second incident.
On April 8, 2003, Mr. McCloud was before Judge Sassone on a motion to suppress evidence in his drug case. During the hearing, the following colloquy occurred:
THE COURT:
Be quiet, McCloud.
MR. McCLOUD:
Hold up, Your Honor.
THE COURT:
Mr. McCloud, let me just tell you one thing; all right? If you make one more statement to the Court, I'm going to find you in contempt. Do you understand that? You have a lawyer to speak for you. You are not to speak. One more 
MR. McCLOUD:
But my lawyer isn't doing what he's supposed to be doing.
THE COURT:
All right, Mr. McCloud. I'm going to find you in contempt of court and sentence you to serve six months in the parish prison; all right?
MR. McCLOUD:
All right, then. I can go back to jail, then?
THE COURT:
Mr. McCloud, I'm going to find you in contempt of court and give you another six months in the parish prison. It will be consecutive with the sentence I just imposed.
MR. McCLOUD:
What I'm saying, Ms. Sassone 
THE COURT:
Mr. McCloud, I'm going to find you in contempt of court and give you another six months. So now you have 18 months in the parish prison. Do not say one more word, Mr. McCloud.
The hearing on the motion to suppress was then continued to May 15, 2003. During that hearing, Mr. McCloud attempted to inform Judge Sassone that he had retained private counsel to defend him, and that he did not wish to be represented by Calvin Fleming, his court-appointed IDB attorney. The following colloquy occurred:
MR. FLEMING:

*864 On a motion to suppress evidence. This was held open at my request. Mr. McCloud has asked me to inform the Court that Mr.  is it James Thomas?
MR. McCLOUD:
Thomas.
THE COURT:
That who?
MR. FLEMING:
 Thomas, John Thomas, has been paid, either by Mr. McCloud or his family, to represent him. I do not believe Mr. Thomas 
THE COURT:
Has Mr. Thomas signed the record?
THE CLERK:
I know he came to court Monday, but I'm not aware 
THE COURT:
He hasn't signed the record. I think he was here on another defendant. He hasn't signed the record, Mr. 
MR. McCLOUD:
He was here for both of us Monday. He's supposed to be in trial in Judge Zeno's court right now.
THE COURT:
Oh, well. Mr. Fleming's your attorney as it stands now. Mr. Thomas hasn't signed the record. And we have police officers here. We're going to go forward with the motion hearing.
MR. McCLOUD:
What I'm saying is I already retained Mr. Thomas to be 
THE COURT:
And I'm also going to set a hearing for you to pay IDB and reimburse the Indigent Defender Board for all the time they've spent representing you. Because if you can afford to pay Mr. Thomas, how much 
MR. McCLOUD:
I can't afford it. My family's paying for it.
THE COURT:
Okay. Well, somewhere, the funds came from somewhere.
* * *
MR. McCLOUD:
So you're telling me that I can't have the counsel of my choice?
THE COURT:
I'm not telling you anything, Mr. McCloud.
MR. McCLOUD:
You're saying he's my attorney. I'm telling you he's not my attorney.
THE COURT:
You don't need to address the Court, Mr. McCloud; all right? You have a lawyer sitting here.
MR. McCLOUD:
No, I don't.
THE COURT:
Mr. McCloud, if you say one more word, I'm going to find you in contempt of court. Do you 
MR. McCLOUD:
So you denying me my right to have my counsel of my choice.
THE COURT:
I'm going to find you  I'm going to find you in contempt of court, Mr. McCloud, and sentence you to serve six months in the parish prison.
The minute entry on April 8, 2003 reflects a "disturbance in the court room," while the minute entry on May 15, 2003 reflects that Mr. McCloud made a "loud outburst in Court."
*865 Judge Sassone steadfastly maintained to the Commissioners that she did not act inappropriately, violate the law, violate the Canons of the Code of Judicial Conduct, or abuse her authority in any way. Judge Sassone testified that Mr. McCloud presented a security risk, and that Mr. McCloud's conduct was inappropriate because he referred to her as "Ms." Sassone as opposed to "Judge" Sassone. Judge Sassone agreed that she did not tell Mr. McCloud on either April 8, 2003 or May 15, 2003 that he had the opportunity to be heard orally by way of defense or in mitigation, but she defended her actions by claiming that his attorney was present and could have spoken up on his client's behalf. Judge Sassone also reasoned that Mr. McCloud would get credit for the jail time he served on the contempt when he was sentenced on the underlying criminal charge against him. However, she admitted on further questioning that she did not know at the time she ordered the jail time for contempt whether he would actually be found guilty of the underlying criminal charge.
Judge Sassone argues that the transcripts demonstrate that Mr. McCloud was disrespectful of the judicial process, and despite repeated warnings by her, he continued to disrupt the criminal proceedings. Thus, she properly exercised her judicial discretion and held him in contempt. Judge Sassone argues that Mr. McCloud did not appeal his contempt ruling as legal error, and that even if her actions amounted to legal error, they did not constitute judicial misconduct.
La. C. Cr. Proc. art. 22[5] provides for a finding of contempt only after a judge has afforded the defendant "an opportunity to be heard orally by way of defense or mitigation." The Commission concluded that Judge Sassone did not afford Mr. McCloud an opportunity to be heard on either April 8, 2003, or May 15, 2003, and that she also failed to follow specific requirements of La. C. Cr. Proc. art. 22 by her failure to recite the facts constituting the contempt when she made her rulings.
In In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172, this Court recognized the dangers of subjecting a judge to discipline because of an erroneous legal ruling, in that it "has the potential to trammel the exercise of judicial discretion and stifle and independence of the judiciary." Quirk, 705 So.2d at 177. Thus, this Court adopted a standard to be applied when addressing whether a judge has committed legal error sufficient to rise to the level of judicial misconduct. We held that "a judge may be found to have violated La. Const. Art. V, § 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error." Id.
We first note that although Judge Sassone told the Commission that Mr. McCloud indicated disrespect for her because he referred to her as "Ms. Sassone," and did not use her title as a judge, we have listened to the audiotape of that proceeding and discerned no disrespect in Mr. *866 McCloud's tone or manner in referring to her as "Ms. Sassone."
We also reject Judge Sassone's contention that she conducted court proceedings with regard to Mr. McCloud as she did primarily because he posed a security risk. We note that Judge Sassone did not cite security concerns as justification for her contempt rulings in her response to the OSC's preliminary inquiry letter.[6] In addition, we note that Mr. McCloud was seated in the jury box and shackled to other prisoners brought to court that day. Moreover, after listening to the audiotapes of the proceedings, it is clear that Mr. McCloud was not belligerent, and we did not discern any threats to security posed by Mr. McCloud.
After a review of the record, transcripts and audiotapes, it is clear that Judge Sassone failed to follow the requirements of La. C. Cr. Proc. art. 22. We find that the procedures utilized by Judge Sassone in holding Mr. McCloud in direct contempt amounted to an abuse of her contempt power. Thus, under the standard set forth in Quirk, we find that Judge Sassone's actions are contrary to the law as set forth in La. C. Cr. Proc. art. 22.
We also find that the total contempt sentence of two years imposed by Judge Sassone was an abuse of her authority and discretion. Although La. C. Cr. Proc. art. 25[7] provides for a maximum six month sentence for a finding of direct contempt, this does not mean that every act of contemptuous conduct requires a six month sentence. Thus, even if Mr. McCloud's actions were contemptuous, the record does not reflect behavior on the part of Mr. McCloud to justify such a sentence.
Finally, the Commission did not accept Judge Sassone's contention that her contempt holdings were essentially harmless in the McCloud case, as well as in the cases cited in the other counts of the Formal Charge, because defendants subsequently got credit for time served for contempt against their ultimate sentences on the underlying charges. We agree with the Commission's conclusion and reasoning, and find that Judge Sassone could not know with certainty, at the time she held Mr. McCloud in contempt, that a future sentence would be handed down that would exceed the jail time she imposed for contempt.

Count II
In Count II Judge Sassone was charged with abusing her authority as a judge by exceeding her contempt power and/or abusing such contempt power in the matter of State v. Dung Tran. Judge Sassone held Mr. Tran in direct contempt of court three times and sentenced him to three consecutive ninety-day sentences in the parish prison, for a total of 270 days.
Mr. Tran had a lengthy arrest record, but only one prior conviction in 1988. In 2003, he was charged with possession of a *867 controlled dangerous substance stemming from his possession of two Darvocet pills. Mr. Tran's bond was set at $10,000 by the magistrate, and Mr. Tran posted bail in that amount. On December 17, 2003, Mr. Tran appeared in Judge Sassone's court for arraignment, at which time she increased his bond to $100,000. The following colloquy occurred:
THE COURT:
What kind of rap sheet does Mr. Tran have?
MR. TRAN:
Bad.
THE COURT:
Bad; huh?
MR. SCHLOSSER:
Yes, ma'am. Our records show he's got one conviction back in `88 for PCP. He's got ten felony arrests, 14 misdemeanors, seven city, one traffic. A lot of them are aggravated battery and resisting arrest. He's got  they're presently screening another matter, Jay Adair.
THE COURT:
Domestic violence?
MR. GRISBAUM:
Uh-huh (affirmative response).
THE COURT:
And you just have a $10,000 commercial bond; is that what I'm seeing here?
MR. DAUME [defense counsel]:
That's my understanding, Your Honor.
THE COURT:
We have to increase his bond. What's this, on this schedule for possession of CDS, what's the deal on that?
MR. DAUME:
It's my understanding it's one pill, Your Honor.
MR. SCHLOSSER:
It's Darvocet. I think it's two pills, Your Honor. Yeah, two Darvocets.
MR. GRISBAUM:
I think with his history, his bond is woefully inadequate. Especially with 
THE COURT:
He's going to be a bill obviously; huh?
MR. GRISBAUM:
Absolutely, Your Honor.
THE COURT:
We'll set $100,000 cash or property bond; okay?
(Whereupon, a recess was taken after which the following proceedings were had in open court, and a new case was called after the break).
THE COURT:
The defendant's here?
THE PROBATION OFFICER:
Yes, ma'am.
THE COURT:
Where is he?
You all need to go outside and do that. We're trying to get some order in the court, please.
THE BAILIFF:
Quiet, please.
THE COURT:
Okay. On Mr. Crowden.
THE PROBATION OFFICER:
Judge, we had a wrong address, Your Honor.
THE COURT:
Wait. Wait one second.
MR. TRAN:
Your Honor, in the 
THE BAILIFF:
Will you sit down and be quiet. Don't say another word.
THE COURT:

*868 Mr. Tran, let me say something. If you say one word-you speak English, Mr. Tran?
MR. TRAN:
Ma'am 
THE COURT:
Sit down, Mr. Tran.
* * *
MR. GRISBAUM:
I'll be back in about 20 minutes, Your Honor.
THE COURT:
Come back at 2:00, if you have enough time to grab lunch.
MR. TRAN:
Ma'am, I only need 
THE COURT:
Mr. Tran  Mr. Tran, I'm going to find you in contempt of court, and I'm going to sentence you  Nick, I'm going to sentence him. You're going to serve 90 days in the Correctional Center; all right?
MR. TRAN:
But, but 
THE COURT:
Mr. Tran, if you say another word, you're going to get another 90 days.
MR. TRAN:
Ma'am 
THE COURT:
Oh, Jesus. All right. All right. I'm going to give you 90 days more. So that's 180 days, Mr. Tran.
MR. TRAN:
But, ma'am 
THE COURT:
Be quiet.
(Whereupon, Mr. Tran's rambling was inaudible to the court reporter.)
THE COURT:
Nick, put the cuffs on him, Nick.
MR. TRAN:
I was bailed out and 
THE BAILIFF:
I'm about to take him over as soon as Rose gives me the paperwork. I'm ready.
THE COURT:
Can somebody tell him to be quiet. I mean 
MR. TRAN:
Ma'am, my lawyer didn't say anything 
THE COURT:
Mr. Tran 
MR. TRAN:
 on my behalf.
THE COURT:
Mr. Tran, do you understand what I'm telling you?
MR. TRAN:
Yes, ma'am.
THE COURT:
Be quiet.
MR. TRAN:
But I was bailed out 
THE COURT:
Mr. Tran, I'm going to give you another 90 days; okay?
So how many is that?
THE COURT REPORTER:
270.
THE CLERK:
270.
THE COURT REPORTER:
270.
THE COURT:
270 days in the Correctional Center, Mr. Tran.
Judge Sassone steadfastly maintained to the Commissioners that as to Mr. Tran she did not act inappropriately, violate the law, or violate the Canons of the Code of Judicial *869 Conduct. Judge Sassone further indicated that she did not regret her actions in the Tran case,[8] and she denied that the 270-day sentence for contempt was excessive or unreasonable.[9] Judge Sassone testified that Mr. Tran presented a security risk in her courtroom when she held him in contempt,[10] in that every time she instructed him not to speak, he "blurt[ed] things out on the record." Judge Sassone observed that her courtroom was very crowded at this time and that her criminal docket is very large, and she reiterated that "it is dangerous to allow someone to take over the courtroom."
Judge Sassone argues that Mr. Tran was disrupting the proceedings, despite repeated warning to sit down and remain quiet. Thus, as with Mr. McCloud, she was well within her discretion to exercise her inherent power to impose silence, respect, decorum and submission. She also insists that Mr. Tran was not denied the opportunity to be heard prior to being held in contempt.
The Commissioners did not find Mr. Tran's attempts to communicate with Judge Sassone in open court to be contemptuous. The Commissioners noted that once Judge Sassone ruled him in contempt, he had no attorney present to assist him, and Judge Sassone afforded him no legal proceedings to try to mitigate her ruling. The Commission members rejected Judge Sassone's contention that her primary reason for imposing 270 days of jail time for contempt on Mr. Tran was because he posed a security risk.
Our review of the transcripts and the audiotapes make it clear that Mr. Tran was clearly confused about what had transpired in Court that morning, and that he was merely trying to get information, or clarification, from Judge Sassone. Mr. Tran addressed Judge Sassone with respect at all times. We agree with the Commission that although Mr. Tran may have had numerous arrests, he had exhibited no indications that he was a danger to Judge Sassone in the courtroom. We note that he was handcuffed and in the jury box when he spoke out to the Court. Further, Judge Sassone admitted to the Commission that a defendant who disrupts a court proceeding may be removed from the courtroom or dealt with in some way other than holding him in contempt. Thus, we agree with the Commission that if Judge Sassone had exhibited more patience, she *870 could have used one of these other alternatives.
Thus, pretermitting the issue of whether Mr. Tran's actions were contemptuous, we find that the procedures utilized by Judge Sassone in holding Mr. Tran in contempt did not comport with the procedures required by law for the punishment of contempt, and therefore amounted to an abuse of her contempt power. As with Mr. McCloud's case, we find that under the standard set forth in Quirk, Judge Sassone's actions are contrary to the law as set forth in La. C. Cr. Proc. art. 22. Moreover, even if Mr. Tran's behavior constituted direct contempt, based on these facts, we find that Judge Sassone's sentence of 270 days in jail is clearly excessive, and demonstrated an abuse of her power and discretion.
We also find no merit to Judge Sassone's argument that she was denied a full and fair hearing related to this charge. Procedural due process and the Rules of this Court require a judge be given before the formal hearing in the matter, fair notice of the charge upon which the Commission seeks to recommend discipline. Quirk, 705 So.2d at 187. Without such notice, the judge is unable to adequately prepare for or defend against the allegations of misconduct. Id. Thus, this Court will not address conduct found by the Commission to be in violation of the Code of Judicial Conduct or the Louisiana Constitution where the judge was not given fair notice of that conduct in the Formal Charges. Id.
Judge Sassone argues that the formal charges did not allege that Mr. Tran's bond was improperly revoked, yet she was cross-examined by Commission members regarding the Mr. Tran's bond revocation. A review of the record and the Commission's finding reflect that Mr. Tran's bond revocation is relevant to the proceedings as the background against which Mr. Tran's conduct occurred. We do not believe that any substantive consideration of the bond revocation by the Commission had any bearing on its findings, or on the recommendation of discipline. Furthermore, as we are not bound by the Commission's findings, we would not consider any such substantive finding regarding Mr. Tran's bond revocation as a basis for discipline in this case. Our findings are based solely on Judge Sassone's actions in holding Mr. Tran in contempt of court. Our discussion of Judge Sassone's revocation of Mr. Tran's bond is solely as explanation for Mr. Tran's conduct leading up to the contempt rulings.

Count III
In Count III, Judge Sassone was charged with abusing and exceeding her authority by revoking the defendant's bond in the matter of State v. William Adams. Mr. Adams was charged with second degree battery. On March 18, 2003, Judge Sassone revoked Mr. Adams' bond after the following colloquy with his counsel, Philip C. Belancio:
THE COURT:
What's the bond?
MR. BELANCIO:
I understand that he's got a $7,500 PSBU [personal surety bond undertaking].
THE COURT:
I think we need to test the surety. Probably you need to request an increase in the bond.
MS. SCHNEIDER:
Yes, Your Honor.
THE COURT:
We'll test his surety when, tomorrow?
MR. BELANCIO:
Your Honor, I have a trial in the morning in Cusimano's court.

*871 THE COURT:
Okay. And that's in the same building, so you can walk over at some point.
MR. BELANCIO:
Yes, okay.
THE COURT:
3/19, 10:00. Check in with us.
MR. BELANCIO:
Okay.
THE COURT:
Go to Division "L" and figure out what's going on. You have to notify the surety to be here tomorrow morning at 10:00.
MR. BELANCIO:
Your Honor, he's been here four times already.
THE COURT:
Okay. Good. Just  I'm going to revoke the bond; how about that?
MR. BELANCIO:
We'll be here tomorrow.
THE COURT:
No, too late. No bond. He doesn't have a bond. I'm going to hold him without a bond; okay?
At the Commission hearing, Judge Sassone denied that she acted contrary to law in Mr. Adams' case, or that she abused her authority or violated the Code of Judicial Conduct in any way. Judge Sassone further indicated that she did not regret her actions in the Adams case. Judge Sassone testified that she believed Mr. Adams' attorney, Mr. Belancio, was "being disrespectful" to her, but she adamantly denied that she revoked Mr. Adams' bond because she was angry with Mr. Belancio. Judge Sassone maintained that she revoked the bond because it was invalid on its face, as the surety did not live in Jefferson Parish, and thus she was allowed to remand Mr. Adams until a proper surety was substituted.
Upon further questioning by the Special Counsel, Judge Sassone agreed she had the option to set some other kind of bond in another amount, or a bond that imposed other conditions. When asked if she agreed that "defendants, other than certain capital defendants, have a Constitutional right to bail," Judge Sassone replied, "[u]nder certain circumstances." When questioned by the Special Counsel whether she believed a contradictory hearing is required to revoke bail, Judge Sassone replied, "[i]t depends on your definition of a contradictory hearing," but she agreed that La. Const. art. I, § 18 and La. C. Cr. Proc. art. 330 call for a contradictory hearing. Judge Sassone argues that Mr. Adams' bond was property revoked in open court, while the district attorney, the defendant and his attorney were all present before the judge and had an opportunity to speak and present evidence. Thus, she contends that there was a contradictory hearing as required by law. Judge Sassone further points out that Mr. Adams never took a supervisory writ to challenge her actions.
La. Const. art. I, § 18[11] and La. C. Cr. Proc. art. 330 allow a judge to revoke a *872 defendant's bail, but only after a contradictory hearing and a finding by clear and convincing evidence that there is a substantial risk that the person may flee or pose an imminent danger to any other person or the community.[12] There is nothing in the transcripts, or otherwise in the record, which gives any indication that Judge Sassone held a contradictory hearing, nor made the requisite findings to revoke Mr. Adams' bail. Judge Sassone stated nothing on the record regarding the bond being invalid on its face, nor did she state any other facts on the record as the basis for her revocation of the bond. While we do not have the audiotape of this proceeding,[13] the transcript reveals Judge Sassone's action to be retaliatory. As one Commissioner described it, Judge Sassone's actions in revoking Mr. Adams' bail were "petulant in the extreme." Thus, under the standard set forth in Quirk, we find that Judge Sassone's actions are contrary to the law as set forth in La. Const. art. I, § 18 and La. C. Cr. Proc. art. 330.
Count III also charged Judge Sassone with acting in a rude, condescending and demeaning manner to Mr. Adams' lawyer, Mr. Belancio, which demonstrated a lack of proper judicial temperament and demeanor because she did not act in a matter that was patient, dignified and courteous. The following colloquy occurred between Judge Sassone and Mr. Adams' attorney, Mr. Belancio on April 14, 2003:
THE COURT:
Who else is sitting in the courtroom? Sir, what are you here for, sir? . . . The gentleman in the back with the glasses.
MR. BELANCIO:
They're the witnesses for our trial.
THE COURT:
They're what?
MR. BELANCIO:
They're the witnesses for our trial that was set for today.
Those are the two witnesses.
THE COURT:
You don't put your witnesses on standby?
MR. BELANCIO:
I have them here.
THE COURT:
They're your witnesses?
MR. BELANCIO:
Yeah. They've been here all day, and the last trial date too.

*873 THE COURT:
Well, why are you making witnesses come sit in the courtroom?
MR. BELANCIO:
Because I don't know when we're going to trial.
THE COURT:
Well, you need to talk to the DA before you come over here. Have you ever thought of putting your witnesses on standby?
MR. BELANCIO:
I have them here. So they don't have to be on standby if they're here.
THE COURT:
Well, it's a waste of time for them to keep sitting in the courtroom all day.
MR. BELANCIO:
I feel the same way.
THE COURT:
We have a million clients on our docket. Your client's not going to go to trial ahead of other people. And it might be better, for these people to not miss whatever they do during the day, to put them on standby next time. All right. What's left? Is that it? Thomas, we need to go through the docket, then?
THE TRANSPORTING DEPUTY:
Yes, Judge.
THE COURT:
Let's  you want to take the people in the box?
THE TRANSPORTING DEPUTY:
Adams.
THE COURT:
Mr. Adams. May 12th.
MR. BELANCIO:
Your Honor, I need to put a few things on the record too.
THE COURT:
Wait one second. Just have a seat. We'll do that last. Who's after Adams?
MR. BELANCIO:
Your Honor, I'm due in court at 3:00 in Orleans. Is there any way we can take that now? I've lost my whole day here today. You know, I've got to be in court 
THE COURT:
You know, you really  can we have quiet in the courtroom, please.
MR. BELANCIO:
I'm due in Division "C" over in Orleans.
THE COURT:
Mr. Belancio, you whine a lot. So just sit down. You're not any different than anybody else who hasn't been here all day.
MR. BELANCIO:
All right. Thank you.
THE COURT:
All right? I mean I hate to tell you that 
MR. BELANCIO:
That's all right.
THE COURT:
 but you've been complaining all day long. If you don't want to be here, don't practice law; okay?
All right. Who's next to Mr. Adams?
When questioned at the hearing about this exchange, Judge Sassone denied that she was rude, condescending, or demeaning, and she further denied that she was not patient, dignified, or courteous to Mr. Belancio. Judge Sassone maintained that Mr. Belancio "acted inappropriately" and "talked back." Judge Sassone argues that Mr. Belancio acted disrespectfully and was determined to obtain priority consideration to have his case called ahead of all of the others.
*874 The transcript of the April 14, 2003 proceeding reflects that Judge Sassone chastised Mr. Belancio for having his witnesses available throughout the day. We agree with the Commission that, considering the consequences of Mr. Adams' surety having left the March 18, 2003 proceeding early, and that his client's bail was revoked, Mr. Belancio would not have risked having his witnesses absent again at whatever time Judge Sassone called the case. It is further clear from the transcript that Judge Sassone went out of her way to move the Adams case to a later time in the day. In fact, she directed her court personnel to take Mr. Adams last. We agree with the Commission that these actions are retaliatory and a violation of the ethical rule that a judge conduct judicial duties with dignity, patience, and courtesy.
Our review of the audiotape reflects that Judge Sassone acted in a rude, impatient and sarcastic manner towards Mr. Bellancio, which served to unnecessarily demean him. We agree with the Commission that this conduct is inexcusable, and a violation of the Code of Judicial Conduct.

Count IV
In Count IV, Judge Sassone was charged with exceeding her authority by revoking the defendant's bond in the matter of State v. Kenneth Vincent. Mr. Vincent and his co-defendant were before Judge Sassone after being charged with six counts of distribution of a controlled dangerous substance. On March 17, 2003, Mr. Vincent moved to recuse Judge Sassone. On March 24, 2003, the following occurred:
THE COURT:
Okay. We'll pre-try it later. Who's next?
THE CLERK:
Judge, he filed a motion to recuse.
THE COURT:
Who did?
THE CLERK:
Kenneth Vincent.
THE COURT:
Kenneth Vincent, a motion to recuse. All right. Good. How about that?
Where are you Mr. Proctor?
MR. PROCTOR (Mr. Vincent's attorney):
Yes, Your Honor.
THE COURT:
See what he says. Okay. That's fine. Everybody will just have to wait their turn.
Okay. Good. Just set this  I'm not recusing myself in this case. Just set it for a hearing; okay?
See you. Bye.
MR. PROCTOR:
Thank you, Your Honor.
(Whereupon, the hearing was concluded).
After the transcript of the hearing is concluded, the audiotape reflects that Judge Sassone states: "Who's next? Mr. Vincent is held without bond, without date. All right. Go ahead." The minute entry of the proceeding reflects that: "The Court ordered that this case is to be reallotted to another division for recusal hearing. If recused, this case is to be reset for trial in reallotted division. The Defendant was remanded to Jefferson Parish prison. The Court ordered that this Defendant is to be held without bond."
At the Commission hearing, Judge Sassone testified that she did not revoke Mr. Vincent's bail; rather, she said that she was merely "reiterating" his bond status on the record for the benefit of the transporting *875 deputy.[14] Judge Sassone was adamant that she did not revoke the bail, as there was no bail set in the first place, and that her reference to the defendant being held without bail was necessary to tell the transporting deputy the state of affairs as to bail status. Further, Judge Sassone stressed in her testimony that the defendant's attorney was focused on a plea bargain, as opposed to bail, by the time the matter was in her court. In response to the question as to whether she complied with Louisiana law governing setting bail, Judge Sassone replied, "My answer is there was no bond hearing set. We were not in court to discuss bond. We were in court on other matters. It was not a bond hearing."
After a review of the record, we agree with the Commission that Judge Sassone's assertion that she did not revoke Mr. Vincent's bond is not credible. The record contains documents referencing the defendant's bond.[15] Further, Judge Sassone would have no reason to advise the transporting deputy of Mr. Vincent's bond status if she had not changed that status herself.
As the Commission recognized, regardless of Mr. Vincent's record, the law allowed (1) Mr. Vincent the right to seek to have Judge Sassone recused, (2) Mr. Vincent's lawyer the right to try to make the best deal possible for his client, and (3) Mr. Vincent the right to a contradictory hearing if his bail was being revoked. After a review of the record, transcript and audiotapes, we find that Judge Sassone revoked Mr. Vincent's bond after she referred his motion to recuse to another section of court, and after Mr. Vincent's counsel had left the courtroom. Once a motion to recuse has been filed, a judge has no power to act, and any action taken by that judge is an absolute nullity. State v. Price, 274 So.2d 194, 197 (La.1973). Further, Judge Sassone did not hold a contradictory hearing, nor make the requisite findings to revoke Mr. Vincent's bail. Thus, under the standard set forth in Quirk, we find that Judge Sassone's actions are contrary to the law as set forth in La. Const. art. I, § 18 and La. C. Cr. Proc. art. 330.

Count V
In November 1999, the Commission filed Formal Charge 0109 against Judge Sassone, alleging that she engaged in misconduct in the course of her 1998 election campaign for a seat on the Fifth Circuit Court of Appeal, as well as during a campaign for judicial office in 1996.[16] In *876 response to Formal Charge 0109, Judge Sassone and the Commission entered into a Deferred Recommendation of Discipline Agreement (DRDA) on August 29, 2000. If the Commission subsequently determined that Judge Sassone had failed or refused to comply with her obligations under the DRDA, the default provisions of the agreement provided that the Formal Charge would be immediately reinstated by the Commission; the allegations of the Formal Charge pertaining to the inappropriate campaign advertising and the 1996 conduct would be deemed admitted (but not the allegations that comprise the misrepresentations); and Judge Sassone would agree to be publicly censured by this court. Alternatively, if the term of the DRDA expired without there having been a violation by Judge Sassone thereof, the Commission agreed that it would dispense with making any recommendation of discipline to this court in connection with Formal Charge 0109.
The manner in which Judge Sassone complied and/or failed to comply with the DRDA was one of the issues heard on February 22-23, 2007, when all five counts that comprised Formal Charge 0270 formed the basis for Commission proceedings. The Commission found that Judge Sassone violated the conditions of her DRDA, but opted to issue a private admonishment, rather than submit this misconduct to the court with the recommendation of judicial discipline as to Counts I through IV.
In order to demonstrate what she believed to be an erroneous finding by the Commission related to Count V, Judge Sassone moved this Court for an order directing the Commission to file the deleted portions of the record.[17]
The Commission has asserted that because the records concerning Count V are now before the Court, we can consider this prior discipline in conjunction with the determination of the appropriate discipline in this case (under the Chaisson factors). Judge Sassone has argued that this Court does not have jurisdiction to impose sanctions with regard to Count V, and that because it was not considered by the Commission in imposing sanctions, it should not be considered by this Court.
While this Court would not have jurisdiction to impose any sanction for Count V, this Court is within its rights to consider the prior discipline issued by the Commission in Count V as a Chaisson factor when determining the appropriate sanction.

Recommendation of Discipline
For the above reasons, we agree with the Commission that all of the charges were proven by clear and convincing evidence. We further find that Judge Sassone's actions were contrary to clear and determined law, and were part of a pattern or practice of legal error. Throughout this entire proceeding, Judge Sassone has failed to acknowledge that she did not follow the law in her contempt rulings, or in revoking a defendant's bail. Thus, pursuant to the standard set forth in Quirk, we find that Judge Sassone's actions *877 rose to the level of judicial misconduct.
Based on the above findings, we hold that Judge Sassone violated Canons 1, 2 A, 3 A(1) and 3(A)(3) of the Code of Judicial Conduct, as her actions did not preserve the integrity of the judiciary, were not in accordance with the law and did not show patience or dignity toward lawyers with whom she dealt in an official capacity. Furthermore, Judge Sassone's abuses of contempt power and her improper bond revocation constitute persistent and public conduct prejudicial to the administration of justice that brings the judicial office onto disrepute under La Const. art. V, § 25(C). Since we find that Judge Sassone was guilty of misconduct under both the Code of Judicial Conduct and the Louisiana Constitution, we now turn to the issue of sanctions.
In deciding on an appropriate discipline in this matter, we look to the factors set forth by this court in In re: Chaisson, 549 So.2d 259 (La.1989). In Chaisson, this court, citing Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;
(b) the nature, extent and frequency of occurrence of the acts of misconduct;
(c) whether the misconduct occurred in or out of the courtroom;
(d) whether the misconduct occurred in the judge's official capacity or in his private life;
(e) whether the judge has acknowledged or recognized that the acts occurred;
(f) whether the judge has evidenced an effort to change or modify his conduct;
(g) the length of service on the bench;
(h) whether there have been prior complaints about this judge;
(i) the effect the misconduct has upon the integrity of and respect for the judiciary; and
(j) the extent to which the judge exploited his position to satisfy his personal desires.
Regarding factors (a) and (b), the Commission found that Judge Sassone's actions, as set forth in the Formal Charge, evidenced a pattern of abuse of her judicial powers by holding persons in contempt of court without following mandatory legal procedures in contempt proceedings, and, in more than one case, she ruled a defendant in contempt without just cause. Further, Judge Sassone did not follow the law and give sufficient legal notice as to modification of bail bonds, and she did not convene contradictory hearings on the issue of bail modification in accordance with law, all purportedly in order to move her docket more rapidly.
Judge Sassone argues that the Commission proved a "pattern" in only two allegedly improper contempt rulings and two allegedly improper bail modification in nearly seventeen years on the bench. Judge Sassone argues that two instances do not reflect a pattern of frequent misconduct. Further, Judge Sassone argues that the nature of the conduct at issue is "four quick and close bail/contempt calls made by a district judge from the bench in a crowded courtroom with a lengthy docket."
While admittedly the frequency of the misconduct is not substantial if viewed over the course of her entire judicial career, we nonetheless find that Judge Sassone's actions reflect a pattern of refusing to follow the law. In both her contempt rulings and bond revocations, Judge *878 Sassone failed to follow the clear mandates of the law, and subsequently has refused to acknowledge this failure.
Regarding factors (c) and (d), both the Commission and Judge Sassone agree that the conduct occurred in the courtroom and with respect to her official judicial duties.
Regarding factor (e), the Commission noted that Judge Sassone steadfastly and firmly denied throughout her hearing that she violated any provisions of the Code of Judicial Conduct or of the Louisiana Constitution, or that she abused her judicial authority. Judge Sassone responded to questioning, in part, by noting that her judicial philosophy may be different from that of another judge. Fully acknowledging the truth of Judge Sassone's point as to differing philosophies, the Commissioners were nonetheless struck by Judge Sassone's complete lack of recognition that she could possibly have been wrong not to apply laws pertaining to contempt and bail bonds with more care and attention.
Judge Sassone argues that she has acknowledged that the "acts" occurred, but she contends that the acts at issue do not constitute sanctionable misconduct. Judge Sassone also argues that she has exhibited contrition. She points to one instance in the hearing wherein she agreed that during the relevant time frame she was experiencing "a very difficult time" in connection with her cooperation with the Wrinkled Robe investigation, that there were some things she wishes she had "done differently," and that some of the things she did during that time "were perhaps not good judgment."
We do not find that Judge Sassone has acknowledged her actions. She has refused to admit to any wrongdoing, and has conjured up explanations for her conduct after the fact which do not comport with the record.
Regarding factor (f), the Commission members concluded, after listening to Judge Sassone's testimony, that without the Commission recommending serious imposition of discipline as to Counts I through IV of the Formal Charge, in the future Judge Sassone will repeat the kinds of judicial action that she engaged in toward Messrs. McCloud, Adams (and his attorney, Mr. Belancio), Tran, and Vincent.
Judge Sassone argues the Commission improperly drew a sweeping conclusion about the future from four isolated instances which occurred over three years ago. She argues that the Court should look at the entire course of her 17-year career, in which she has handled more than 7,000 criminal cases, and has never experienced a Fifth Circuit Court of Appeal reversal for improper bail or contempt conduct.
We find no remorse or acknowledgment on behalf of Judge Sassone that her actions were either contrary to law, or constituted misconduct. As such, we can only assume that Judge Sassone has no intention of modifying her conduct in the future.
Regarding factor (g), the Commission and Judge Sassone agree that she took the judicial bench in 1991 and, thus, she was a seasoned judge at the time the conduct occurred.
Regarding factor (h), the Commission noted that no prior misconduct was considered. The Commission declined to consider Count V as a basis for the imposition of discipline, and instead issued a private admonishment to Judge Sassone. Now, however, Count V has been made part of this Court's record. Thus, this Court takes notice of this one prior disciplinary action.
Regarding factor (i), the Commission concluded that Judge Sassone's misconduct placed the judiciary as a whole in a negative light. The Commission stated *879 that it expects a judge who is empowered to deprive persons of their freedom and liberties to faithfully follow and apply the laws of our State and to respect constitutional guarantees. Thus, for a judge to ignore laws, in particular because he or she becomes impatient or angry, is an abuse of power, and can only cast the judiciary as a whole into disrepute.
Judge Sassone argues that this factor typically applies when there is demonstrable evidence that a judge has engaged in publicized or widely-known misconduct. She argues that there is no evidence that the public, the legal community, or the press had any exposure to the isolated instances of conduct at issue-at least until the Commission publicly lodged its allegations of misconduct with this Court.
We find that Judge Sassone's refusal to follow the law during official Court proceedings has served to negatively impact the respect and integrity of the judiciary.
Finally, regarding factor (j), the Commission noted that Judge Sassone told the Commission she ran her court as she did in order to move a heavy criminal docket and because she had concerns about security. However, the Commission stated that the audio tapes and transcripts suggested that Judge Sassone was highly sensitive to any comment that she perceived to be disrespectful of herself or her office. While respect for the judicial office is important, the Commission criticized Judge Sassone for taking such punitive actions and reacting in the extreme to Mr. McCloud, Mr. Tran, Mr. Belancio, and Mr. Adams. As to Mr. Vincent, the Commission believed that Judge Sassone revoked his bail out of anger that he moved to recuse her, and that she was not truthful in her repeated assertions that she did not know Mr. Vincent had a bail bond when he came to her court. The Commission found this to be another example of her intemperance and need to indulge her feeling of importance as a judicial officer.
Judge Sassone argues that the Commission's "diagnosis" of her is absurd. She argues that this factor typically relates to misconduct arising out of monetary greed, political grandstanding or efforts to satisfy prurient interests.
While we agree with the Commission's statements regarding Judge Sassone's demeanor and treatment of those she perceived to be disrespectful, we do not find the evidence sufficient to prove that Judge Sassone's actions were taken to satisfy her personal desires.
The Commission recognized that as a constitutional fact-finding body, it is not a court, and is not called upon or empowered by law to render legal judgments. With such caveat in mind, the Commission found that the record demonstrated that Counts I through IV of the Formal Charge were proven by clear and convincing evidence and that Judge Sassone's actions were in violation of the Code of Judicial Conduct and the Louisiana Constitution. While the Commissioners noted their utmost respect for the independence of the judiciary, they concluded that the actions of Judge Sassone exceeded judicial discretion and amounted to abuse of her powers. As a consequence, the Commission concluded that serious discipline is necessary to try to impress upon Judge Sassone that her actions were wrong and to protect the public.
Accordingly, the Commission recommended that Judge Sassone be suspended without pay for sixty days, as well as ordered to reimburse and pay to the Commission the amount of $2,247.17 in hard costs. Judge Sassone has argued that if her conduct is found to be sanctionable, a more appropriate discipline would be a public censure.
*880 After giving due weight to the Commission's recommendation, we conclude that the proposed penalty is warranted given the totality of the circumstances. We agree with the Commission's finding that Judge Sassone's mistakes in the McCloud, Tran, Adams and Vincent cases were not mere errors, but, instead, rose to the level of ethical misconduct. We further find that Judge Sassone's failure to follow the law deprived Mr. McCloud, Mr. Tran, Mr. Adams and Mr. Vincent of their freedom and liberty.
We are also swayed in our opinion by the lack of acknowledgment, regret or responsibility assumed by Judge Sassone in this case. We note that Judge Sassone argues that she has exhibited contrition, as evidenced by the following testimony at the Commission hearing:
EXAMINATION BY COMMISSIONER:
I just have one general question. Like all of us, we're all  we all congratulate you for all your good work that you did. It's very important, you know, in this area and throughout the state. But, you know, my question is this, I mean, it's just that you seem to have a terrible year 2003. You seem to just be generally stressed and probably almost unable to function in some areas. And some of these incidents occurred during that period of time 
JUDGE SASSONE:
Right. Yes.
EXAMINATION BY COMMISSIONER:
 the contempt stuff and the DRDA stuff and like that. And I would really feel better if you would say to us it was just a very difficult time. There are some things that I wish I'd done differently. But you seem to have a hard time admitting that some of these things that you did were perhaps not good judgment.
JUDGE SASSONE:
I think the comments with Mr. Belancio, I understand how it sounds. And, you know, looking at it in this way, yes, it sounds bad. It really does, and I understand that. And I agree with everything you just said. The bond setting practices, it's  that's been the practice. I understand from your point of view how all this appears. And I guess the best I can do is try to offer an explanation of what occurred.
But, yeah, I think you're right. I think a lot of the comments you made are correct.
While this exchange may be viewed as perhaps a "glimmer" of contrition, when viewed along with her adamant denials of any wrongdoing on her part, or any errors made in these cases, we do not find that this exchange demonstrates any real acknowledgment, or any admission by Judge Sassone that she acted inappropriately. It is clear from the record, her testimony, and her briefs before this Court, that Judge Sassone does not believe that she acted inappropriately, and she has not expressed any intention of changing her procedures or behavior in the future.

DECREE
For the reasons stated herein, it is ordered that Judge Martha Sassone of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, be suspended from judicial office for sixty (60) days without pay. It is further ordered that Judge Sassone be ordered to reimburse and pay to the Judiciary Commission costs in the amount of $2,247.17 incurred in the investigation and prosecution of her case, pursuant to Supreme Court Rule XXIII, Section 22.
*881 VICTORY, J., concurs in part and dissents in part for the reasons assigned by WEIMER, J.
KNOLL, J., dissents and assigns reasons.
WEIMER, J., concurs in part and dissents in part and assigns reasons.
KNOLL, Justice, dissenting.
I cannot agree with the majority opinion's determination that charges against Judge Sassone were proven by clear and convincing evidence that her conduct violated Canons 1, 2 A, 3 A(1) and 3 A(3) of the Code of Judicial Conduct, as well as the constitutional standard enunciated in LA. CONST. ANN. art. V, § 25(C). In my view, the majority impermissibly expands our earlier decision in In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172.
Counts I and II center on criminal defendants McCloud and Tran and involve charges that Judge Sassone abused her contempt power. With regard to defendant McCloud, the majority opinion finds that Judge Sassone: (1) failed to recite the facts constituting direct contempt and to provide the defendant with an opportunity to be heard in defense or in mitigation, as required in LA.CODE CRIM. PROC. ANN. art. 22; (2) erred in finding defendant McCloud guilty of direct contempt; and (3) imposed an excessive sentence. As to defendant Tran, the majority opinion concludes, Judge Sassone failed to follow the dictates of LA.CODE CRIM. PROC. ANN. art. 22; (2) pretermitted finding whether Tran's actions constituted direct contempt; and (3) determined the sentence imposed for contempt was excessive.
I find it significant that neither defendant McCloud nor Tran sought supervisory relief or appealed the direct contempt Judge Sassone found and the sentences she imposed in those regards. In Quirk, this Court recognized the care that must be taken when it is contended legal error is the basis for a finding of judicial misconduct. Id. at 177. Citing JEFFREY M. SHAMAN, JUDICIAL ETHICS, 2 GEO. J. LEGAL ETHICS 1, 8 (1988), this Court stated, "Where mere legal error is involved, `the disciplinary process should not be used as a substitute for appeal.'" Quirk, 705 So.2d at 178. Against that backdrop, this Court determined that legal error can form the basis for judicial misconduct if the "legal ruling or action [is] made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error."
In the present case, I observe that no clear definition exists of "contumacious, insolent or disorderly" conduct addressed in LA.CODE CRIM. PROC. ANN. art. 21. Likewise, LA.CODE CRIM. PROC. ANN. arts. 21, 22, and 25 provide no definition of "breach of peace, boisterous conduct, or violent disturbance" for assessment of contempt. In that light, I find, as we did in Quirk, that the Judiciary Commission's interpretation of the law relative to contempt and the assessment of those facts peculiar to defendants McCloud and Tran contrary to that of Judge Sassone's cannot constitute the basis for a finding of judicial misconduct. First, it has not been shown Judge Sassone improperly determined a law about which there is neither confusion or question nor which is not subject to interpretation. Secondly, I find the majority opinion crosses the line established in Quirk when it substitutes this disciplinary proceeding for appellate review that the defendant did not pursue.
Courts of this state are vested with the power to impose silence, respect, decorum, and submission to their lawful mandates. *882 Peterson v. Gibralter Sav. And Loan, Inc., 98-1601, 98-1609 (La.9/3/99), 751 So.2d 820, 822. These powers provide the means for courts to manage their affairs, achieve orderly procedures within the courtroom, and promote the prompt disposition of cases. Id. Considering the exceptions and argument McCloud made about Judge Sassone's rulings and Tran's repeated violation of Judge Sassone's warnings to sit down and to remain quiet, I find Judge Sassone properly found these defendants in contempt and was justified in immediately imposing sentence as the acts of contempt occurred.
Counts III and IV of the formal charge address Judge Sassone's failure to release defendants Adams and Vincent on bond. The majority finds that with regard to the bond in the Adams case, Judge Sassone: (1) revoked bond when she became irritated with defense counsel and took such action in a retaliatory manner; (2) conducted these proceedings without dignity, patience, and courtesy; and (3) revoked bond without conducting a contradictory hearing as required by LA.CODE CRIM. PROC. ANN. art. 330.
My appreciation of the Louisiana Code of Criminal Procedure is that the trial court may, on its own motion, "for good cause [ ] increase or reduce the amount of bail, or require new or additional security." LA.CODE CRIM. PROC. ANN. art. 342. To the extent that a contradictory hearing was required before Judge Sassone revoked Adams's bail, I find the bond was revoked in open court at a time when the State, the defendant, and his attorney were present and had an opportunity to address the trial judge's actions. Despite the Judiciary Commission's appreciation of these facts, I again note Adams, though represented by counsel, neither appealed Judge Sassone's ruling nor sought a supervisory writ application.
Finally, I find that Judge Sassone's treatment of defense counsel should not be viewed in a vacuum. Although I do not condone the ultimate, unfortunate colloquy between Judge Sassone and defense counsel, I find defense counsel acted disrespectfully and there are repeated examples that he attempted to obtain priority consideration of the matter before the trial court.
With regard to defendant Vincent, the majority finds Judge Sassone: (1) failed to hold a contradictory hearing or make the requisite findings to revoke bail; (2) revoked bond after she referred defendant's motion to recuse to another section of court and thus had no authority to revoke the bond. Relying upon Quirk, the majority finds Judge Sassone's conduct was sanctionable because it occurred contrary to the law.
I disagree that whatever legal error occurred in this instance rises to sanctionable judicial misconduct. I find that if there was legal error in this regard, the appropriate forum to correct the error was by appellate or supervisory review. There is nothing to indicate defendant Vincent sought such review of Judge Sassone's determination. I do not find this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error. Accordingly, I fail to find, as did the Judiciary Commission and the majority opinion, this alleged legal error rose to the level of sanctionable judicial misconduct.
Finding no proof of judicial misconduct by clear and convincing evidence, I respectfully dissent from the majority opinion that sanctions Judge Sassone.
WEIMER, J., dissenting in part.
I agree with the majority that discipline is warranted.
*883 I dissent because I believe that a thirty-day suspension without pay is sufficient discipline considering the totality of the circumstances.
Judge Sassone has served on the bench for seventeen years, having been elected to her seat in the 24th Judicial District in 1990, 1996, and 2002. She assisted in exposing a corrupt bail bonds system within the jurisdiction she serves. During 2003 and early 2004, she experienced security concerns for herself and her family resulting from the public disclosure of the degree of her cooperation with the FBI during "Operation Wrinkled Robe," a federal investigation which resulted in convictions of judges, deputies, and a bail bondsman on charges of illegally splitting bonds. In response to her security concerns, the FBI advised her to lower her profile, limit trips outside her home, and minimize her public appearances. An Assistant U.S. Attorney and an FBI agent confirmed that Judge Sassone's cooperation was integral to the success of Operation Wrinkled Robe.
It was during this time period the conduct questioned in Counts I through IV occurred.
The 24th Judicial District is one of the more active jurisdictions in the state and judges in that court experience lengthy dockets and courtrooms crowded with defendants. The four formal charges occurred within a limited time frame during the many years she presided. Notably, appeals were never perfected as to any of the legal errors alleged in the formal charges of Counts I through IV. Two of the charges involve bond issues from within the failed bail bond system in her jurisdiction.
As to Count I, I do not believe Judge Sassone exceeded the scope of her judicial authority in holding defendant McCloud in contempt. She warned him to be quiet and he refused. I agree with the majority that she erred in failing to follow the dictates of LSA-C.Cr.P. art. 22 by failing to allow the defendant to be heard in defense or mitigation and in failing to recite the facts constituting the contempt. I agree that the two-year sentence imposed was an abuse of her authority and discretion.
I agree with the majority's findings as to Courts II, III, and IV.
Regarding the Chaisson factors[1] (listed in In Re: Judge Martha Sassone, No. 07-0651, at 877), the majority address factors (a) and (b) together. While I agree with the majority's analysis regarding factor (a) (isolated instance or pattern of conduct), I do not believe factor (b) (nature, extent, and frequency of misconduct) was established and agree with the argument of Judge Sassone that the nature of her conduct does not reflect wide-ranging, frequent, intentional, calculated, or deliberate judicial misconduct. No evidence was presented to establish that Judge Sassone has issued more than two questionable contempt citations during her many years on the bench. The only evidence on this issue indicated the opposite. Judge Sassone's bailiff testified that he could not recall similar instances during his ten years of service in her section. The four matters involved decisions made on the spur of the moment from the bench by a district judge presiding over a crowded courtroom.
I also disagree with the majority that factor (f) (change or modify future conduct) was established. The four instances at issue occurred four years ago and there has been no evidence of the conduct being repeated. Judge Sassone points out the Commission improperly drew a sweeping conclusion about the future from four isolated instances. If viewed in the context *884 of her entire career and the fact the behavior has not been repeated, I must conclude she has modified her behavior. She did testify she was experiencing a difficult time when the charged incidents occurred due to the Wrinkled Robe investigation and that there were matters she wishes she had "done differently." She also acknowledged that at other times she exhibited "perhaps not good judgment."
I also agree with the majority that the Commission erred in finding Judge Sassone exploited her position to satisfy personal desires.
For the foregoing reasons and because the misconduct occurred simultaneously with the time Judge Sassone was confidentially assisting the FBI, I would impose a thirty-day suspension without pay.
NOTES
[1] CANON 1: A Judge Shall Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
[2] CANON 2: A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[3] CANON 3: A Judge Shall Perform the Duties of Office Impartially and Diligently

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
(1) A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.
* * *
(3) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.
[4] La. Const. art. V, § 25(C) provides:

On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
[5] La.Code Crim. Proc. art. 22, relative to the procedure for punishing direct contempt, provides:

A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.
[6] Special Counsel questioned Judge Sassone at the hearing whether she had cited to her concerns about security when she answered the initial inquiry about the McCloud complaint, and she admitted that the written responses she made, through her counsel, did not mention security concerns.
[7] La. C. Cr. Proc. art. 25, relative to the penalties for contempt, provides in pertinent part:

A. A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
B. Except as otherwise provided in this Article, a court may punish a person adjudged guilty of contempt of court in connection with a criminal proceeding by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or both. . . .
[8] Judge Sassone testified that it was her practice to review all previously set bail bonds at the time of arraignment. This testimony prompted the following exchange between Judge Sassone and one of the judge members of the Commission:

Q. . . . Do you understand the dilemma of someone who has posted, paid to get out of jail, who had come to court when ordered to do so, came to court expecting to be arraigned on a charge and then finds himself being remanded to jail with a very high bond? Can you imagine how confused or frustrated he might be?
A. I don't know Mr. Tran.
Q. Well, you don't have to know Mr. Tran.
A. That's not my job. That's not my job as a judge to determine whether [the] defendant is confused or frustrated, frankly.
[9] Judge Sassone dismissed concerns about her handling of the Tran case expressed by one of the judge members of the Commission, stating that "I guess it's just we have a difference of opinion about how to operate our courts." She continued, "So I guess it's just a matter of how we operate. Each individual judge has  it's like a little corporation. You have your own business to attend to and you try to dispense with it as quickly as possible."
[10] As in the McCloud matter, Judge Sassone did not cite to her concerns about security when she answered the initial inquiry about the Tran complaint.
[11] La. Const. art. I, § 18. Right to Bail

Section 18. (A) Excessive bail shall not be required. Before and during a trial, a person shall be bailable by sufficient surety, except when he is charged with a capital offense and the proof is evident and the presumption of guilt is great. After conviction and before sentencing, a person shall be bailable if the maximum sentence which may be imposed is imprisonment for five years or less; and the judge may grant bail if the maximum sentence which may be imposed is imprisonment exceeding five years. After sentencing and until final judgment, a person shall be bailable if the sentence actually imposed is five years or less; and the judge may grant bail if the sentence actually imposed exceeds imprisonment for five years.
(B) However, a person charged with a crime of violence as defined by law or with production, manufacture, distribution, or dispensing or possession with intent to produce, manufacture, distribute, or dispense a controlled dangerous substance as defined by the Louisiana Controlled Dangerous Substances Law, and the proof is evident and the presumption of guilt is great, shall not be bailable if, after a contradictory hearing, the judge or magistrate finds by clear and convincing evidence that there is a substantial risk that the person may flee or poses an imminent danger to any other person or the community.
[12] La. C. Cr. Proc. art. 330 provides:

Except as provided in Article 331, a person in custody charged with the commission of an offense is entitled to be admitted to bail before conviction unless the person is charged with a crime of violence as defined by law or with production, manufacture, distribution, or dispensing or possession with intent to produce, manufacture, distribute, or dispense a controlled dangerous substance as defined by the Louisiana Controlled Dangerous Substances Law, and after a contradictory hearing, conducted pursuant to the provisions of Article 330.1, the judge or magistrate finds by clear and convincing evidence that the defendant may flee or poses an imminent danger to any other person or the community.
[13] The tape recording of the proceeding was cut off, apparently due to some mechanical failure.
[14] In her initial response to the Vincent complaint, Judge Sassone stated that Mr. Vincent was held without bond to allow the new Judge to address any issues with regard to bond, and that once the Motion to Recuse was filed, the Court could take no action. Judge Sassone later testified that after she reviewed the record, there was no evidence that bail had ever been set, even though she admitted that there are other ways in which a bond may be set, and that evidence of those bonds was not always found in the defendant's record.
[15] Special Counsel introduced into evidence, for impeachment purposes, OSC Exh. 78, which was a certificate by the Jefferson Parish Correctional Center Records Department reflecting that Mr. Kenneth Vincent had a bond set by 24th JDC Commissioner Kiff, on six different counts, in the total amount of $85,000. Even in the face of this information, Judge Sassone continued to assert that the document presented for impeachment was not a bond and that there was no bond in Mr. Vincent's record.
[16] An amended and supplemental Formal Charge 0109 was filed in January 2000, which covered three general categories: (1) the tenor of Judge Sassone's advertising during her campaign against Judge Susan Chehardy, her opponent in the election for the court of appeal seat, was alleged to have been undignified and inconsistent with the integrity and independence of the judiciary (the "inappropriate campaign advertising"); (2) Judge Sassone allegedly misrepresented facts about her opponent (the "misrepresentations"); and (3) in the 1996 campaign, Judge Sassone made statements that appeared to have committed her with respect to cases, controversies, or issues likely to come before her and to have made pledges or promises other than the faithful impartial performance of the duties of office (the "1996 conduct").
[17] All references to Count V had been deleted from the court record once the private admonishment had been issued.
[1] In re: Chaisson, 549 So.2d 259 (La.1989).